2004 ND 85

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Larry CLARK, Defendant and Appellant.**

No. 20030238.

Supreme Court of North Dakota.

April 19, 2004.

Ladd Ronald Erickson, State's Attorney, Washburn, ND, for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Larry Clark appealed from a criminal conviction entered upon a jury verdict finding him guilty of aggravated assault and reckless endangerment. We conclude the State's closing argument was not obvious error, and we affirm.

I

[¶ 2] Clark was charged with reckless endangerment under N.D.C.C. § 12.1–17–03 for willfully creating a substantial risk of serious bodily injury or death to his daughter by stopping a motorcycle on which she was a passenger in front of a moving semi-truck driven by Jeff Gerou and with aggravated assault under

N.D.C.C. § 12.1–17–02(1) for willfully causing serious bodily injury to Gerou.

[¶ 3] According to Clark, he was driving his motorcycle about 50–55 mph with his ten-year-old daughter as a passenger on a county road in McLean County and Gerou was hauling gravel in his semi-truck from a gravel pit near Riverdale, when Gerou turned onto the county road right in front of Clark. According to Clark, he took evasive action through a ditch, pulled up past Gerou's truck, parked his motorcycle on the side of the road, and walked to the middle of the road to stop Gerou. According to Clark, he

> started running back to [Gerou's truck] and I was screaming some profanity, that he damn near killed us and run us off the road. And he was sitting up in his truck, had his window down and, you know, I said, "You damn near killed us," I said, "you run us off the road." [He said,] "I didn't see you." I said, "That's the problem, you guys aren't looking, you're not even looking and," I said, "this is the third time in less than two weeks I've been chased in the ditch here and," I says, "the only difference is this time I've got my daughter with me." And he looked out the window and he had this spacey, big dilated eyes and he went, "So what," he went. I said, "Get out of the truck, let's talk about this." And he said, "No, I'm not getting out." So I said, "I'm coming up there," and I grabbed the handrail and I started up; and he swung the door at me and I swung around and I just about got my arms on the stacks, got my balance and I got back. I was going to pull myself up and he kept slamming the door trying to knock me off.... He kept trying to knock me off with the door and I was hanging on here (indicating) and finally I got my hand on the door and held it open like this (indicating) and I started to pull myself up, you know, up closer to

his height.... As I was coming up, he had his seat belt on, he turned, he went to throw a punch at me, kind of down; and I just held on with this here one so I threw a left as he was coming around and kind of had my head down a little bit 'cause like I said I was a little bit below him and I seen his arm starting to come and I hit him; and his head snapped around and he looked back and he goes, "You crazy bastard." And I told him, I said, "No, you're the crazy bastard." ... I pulled myself up even with him, I grabbed on to the A post and he looked at me and he went—he just hyperventilated and he started to throw a punch again and I was standing there, I was hanging on with my left hand then I just hit him in the jaw. He just kept shaking his head and hyperventilating and he tried it probably three times. The last time I seen blood coming out of his nose and down his mustache and he tried one more hit and I hit him and then he turned around and he goes, "Okay, okay, I'm sorry," he said, "I'm sorry." I said, "It's kind of late for that now." ... I got down off the truck. You know, I got down, I turned around, looked back at him and he picked his cell phone up off his console kind of over here (indicating) and he was dialing on it and I just walked away and got on the motorcycle and left.

[¶ 4] According to Gerou, he saw a motorcycle about one-half or one-quarter mile down the road when he turned onto the county road, and he

> rounded the corner, started shifting gears and watched the motorcycle in my mirror as I rounded the corner and once I got going above 20, 25 miles an hour, I couldn't see behind me because of the dust.... I no more than drove a couple of minutes and a motorcycle came out of the dust beside me waving his arms and

pointing for me to pull over so I start to stop. The motorcycle pulled in front of me, ... I couldn't see his motorcycle in front of my truck. I couldn't see him over the hood of my truck.... Oh, I locked up the tires, I had to or I would have run him over. I mean, he cut in front of me, was waving his arms and turned in front of me and was pointing to pull over and I had no choice.... I was reaching to set brakes and I saw his helmet round the corner of my truck and I went to open my door to him figuring he was going to tell me my gates were open or I had a flat tire, something of that nature, so I opened my door to him. I turned my head to set my brakes and the next thing I knew I got hit in the head. I turned to look at him and met his hand hitting my face, after that [the n]ext thing I remember is another driver at my door wiping my face with a wet rag.

A jury found Clark guilty of aggravated assault and reckless endangerment.

## II

[¶ 5] Clark argues obvious error occurred during the State's closing argument. He argues the prosecutor incorporated his personal beliefs into his closing argument, vouched for the credibility of the complaining witness, commented on facts not in evidence, improperly asked jurors to place themselves in the shoes of Gerou, and suggested Clark had the burden of proof for the defense of excuse. Clark concedes he did not object to the prosecutor's closing argument and review of these issues is for obvious error.

[¶ 6] This Court exercises its authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice. *State v. Anderson*, 2003 ND 30, ¶ 8, 657 N.W.2d 245; *State v. Evans*, 1999

ND 70, ¶ 9, 593 N.W.2d 336. In *State v. Olander*, 1998 ND 50, ¶ 13, 575 N.W.2d 658, we applied the plain error framework from federal law for analyzing claims of obvious error under North Dakota law. We said an appellate court may notice a claimed error that was not brought to the attention of a trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights. *Id.* at ¶ 14. Under that framework, we said that once an accused establishes a forfeited plain error affects substantial rights, we have discretion to correct the error and should correct it if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at ¶ 16 (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

[¶ 7] A trial court is vested with discretion to control the scope of closing argument, and we will not reverse on the ground the prosecutor exceeded the scope of permissible closing argument unless a clear abuse of discretion is shown. *State v. Skorick*, 2002 ND 190, ¶ 11, 653 N.W.2d 698; *Evans*, 1999 ND 70, ¶ 11, 593 N.W.2d 336; *City of Williston v. Hegstad*, 1997 ND 56, ¶ 8, 562 N.W.2d 91. Unless an error is fundamental, a defendant must demonstrate a prosecutor's comments during closing argument were improper and prejudicial. *Skorick*, at ¶ 11; *Evans*, at ¶ 11. To be prejudicial, improper closing argument must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence. *Evans*, at ¶ 11.

## A

[¶ 8] Clark argues the prosecutor incorporated his personal beliefs into his closing argument and vouched for the credibility of the complaining witness.

During closing argument, the prosecutor said:

> Okay. There are some things in this case that don't make any sense. I don't know how to try to justify them, I don't know if I can, there's a term that was coined about—probably over ten years now out on the West Coast called "road rage" and it didn't make any sense where you heard about those cases where people stuck in traffic would get into confrontations because somebody cut them off or whatever and they would just lose control and there was a big battle. That doesn't make sense.
>
> Another thing that doesn't make a lot of sense to me, Mr. Clark reports this to the police in a couple different ways. . . . And in his statement—and I was not out there, I'm not submitting that I was—he makes a lot of dramatic claims. This is the third time in a couple weeks he almost got run off that road, that his head was almost right by the tire, that this driver was speeding through this intersection when they turned and cut him off. Okay. That the driver, when he walked up to him to just talk to him, said when he said you almost killed us and he said, so what, he was empathetic, he was cocky or whatever, he made all these claims.
>
> Well, what doesn't make sense to me if any of that or part of that is true is why, when you live out there and you know that there's an intersection that supposedly in the last—let's see, I'm going to move these corners—right here is the gravel pit, here's where Mr. Clark comes from his house (indicating). It's just a questionable spot. This is supposedly this dangerous spot, that this is the third time now he was run off the road, okay. Okay. If that was true, it doesn't make sense to me if you're an experienced motorcycle driver that you would go 50 miles an hour or 55, whatever he

said he was going, down this road with your daughter on the back approaching this intersection knowing a truck's coming, already claiming that these guys don't watch, that they just pull out, into his way, that they speed. Why would you ever put yourself in a position that that could happen if that was true. In other words, you have an experience you're not—this isn't an area you're not familiar with. That doesn't make any sense to me when you're on a motorcycle especially with your child, you have to drive on the defense and you certainly, if you know that there's a problem intersection, if it was true he knew there was a problem intersection, doesn't make any sense, he wouldn't drive on the defense there. Trying to stop a truck with a motorcycle with your child, that makes absolutely, absolutely no sense, no rational person can do that. I don't know how that can be justified.

The prosecutor also argued, "I think [Gerou] was unconscious and I think he had a lot of pain," and "I've heard no evidence and I submit to you there was no evidence in this case that there was an excuse."

■ [¶ 9] A prosecutor's closing argument may properly draw reasonable conclusions and argue permissible inferences from the evidence, but a prosecutor may not create evidence by argument or by incorporating personal beliefs. *Evans,* 1999 ND 70, ¶ 8, 593 N.W.2d 336; *State v. Schimmel,* 409 N.W.2d 335, 342–43 (N.D. 1987). In *Schimmel,* at 343 (citations omitted), this Court discussed issues about a prosecutor incorporating personal beliefs into an argument:

> When the state's attorney comments personally on the evidence, he is acting as an unsworn witness for the prosecution who is not subject to cross-examination and who may be perceived as an

expert witness testifying about scientific evidence. Additionally, we are concerned that personal comments made by the state's attorney may convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant. Our final concern is that the prosecutor's opinion carries with it the "imprimatur of the Government." Improper argument by the state's attorney may induce the jury to trust the government's view rather than its own judgment of the evidence when deliberating. Correspondingly, the prosecution's improper suggestions, insinuations and assertions of personal knowledge distort the fundamental guarantee of a fair trial by placing the great weight and presence of the government on the side of the prosecutor, who is not the representative of an ordinary party but of the sovereignty, whose obligation is not only to govern but to govern impartially. The sovereign's interest in a criminal prosecution is not to win at all costs but to see that justice is done.

[¶ 10] In *Schimmel*, 409 N.W.2d at 341, the prosecutor in a DUI case commented that the defendant's blood-alcohol concentration was over the legal limit and argued, "I don't think there's much doubt about that at all." We concluded the prosecutor's argument did not impermissibly express his personal beliefs and conclusions about evidence regarding the results of a blood-alcohol test. *Id.* at 343. We said the prosecutor did not invoke the imprimatur of the government on his behalf; rather, he merely offered his opinion that the evidence revealed the defendant was guilty of driving with a blood-alcohol concentration greater than the legal limit. *Id.* We concluded the prosecutor's comments were not an improper assertion of personal belief in the truth or falsity of the evidence of the guilt of the defendant. *Id.* In reaching

that conclusion, we recognized the trial court had instructed the jury that counsel's argument was not to be considered as evidence in the jury's deliberation, and we concluded the prejudice, if any, that resulted from the prosecutor's closing argument was minimized by the court's cautionary instruction. *Id.*

[¶ 11] Although prosecutors should be vigilant not to inject their personal beliefs into closing argument, we conclude the prosecutor's statements in this case were permissible comments about the nature of the evidence and his opinion that Clark's version did not make sense. There were conflicting versions about the events leading up to the incident between Clark and Gerou. In our view, the prosecutor's statements about Clark's version not making sense and there being no evidence of excuse, taken in the context of the entire argument, reflect permissible inferences about Clark's version of the incident and were not statements of an unsworn witness for the prosecution. There also was evidence that Gerou underwent surgery as a result of the incident and he may have been unconscious when Clark left the scene, which supports a permissible inference that Gerou was in pain. The prosecutor's comments were not beyond the bounds of any fair and reasonable criticism of the evidence. Moreover, the trial court instructed the jury that "arguments of counsel are not evidence," and "[i]f counsel have made statements or expressed opinions to you not supported by the evidence, you should disregard those statements and opinions and be guided by the evidence in this case." Under the circumstances of this case, we conclude any possible prejudice was minimized by the court's cautionary instruction and we conclude any isolated statements that may suggest the prosecutor incorporated his personal beliefs into closing argument or

vouched for the credibility of witnesses are not obvious error.

## B

[¶ 12] Clark argues the prosecutor's statements about "no evidence" of excuse could have been interpreted by the jury to suggest the burden of proof on excuse had shifted to him. During closing argument, the prosecutor said:

The other thing that you'll consider in the jury instructions is whether the defendant's conduct should be excused. In other words, he was mistaken, he thought he could use self-defense and that really isn't true. And the legal definition of an excuse is the defendant's conduct is excused if he believes the facts are such that his conduct was necessary and appropriate for any purposes that would establish self-defense. Let me give you an example to highlight how this makes sense 'cause it sounds a little legalistic. If a person is walking and another person comes up and pulls out a gun, that person points it at this person, the gun. Okay. The person that's having the gun pointed at him reacts, pulls out their gun and shoots the person. Okay. And it's later found out that the gun that was pulled was actually a plastic gun but it looked real. Okay. You still have a defense even though that person really couldn't have shot you. That's the example I would use on excuse, you're excused because of the circumstances, it still was appropriate. There's nothing like that in this case. These are legal things that come up on all the assaults but that doesn't mean they apply to this case. There's nothing that would excuse that the driver could have done that, would have misconstrued that he was going to come out and try to assault the Clarks. I've heard no evidence and I submit to you there was no evidence in this case that

there was an excuse, that something could have given him a mind that I've got to use self-defense here, my daughter is going to get beat up or something like that.

[¶ 13] In *Skorick*, 2002 ND 190, ¶¶ 14–17, 653 N.W.2d 698, we considered a defendant's claim the prosecutor had attempted to shift the burden of proof during closing argument when the prosecutor mentioned the lack of physical evidence. We recognized some courts have concluded a defendant is not denied a fair trial when the prosecutor makes statements concerning the lack of physical evidence during closing argument. *Id.* at ¶ 16. Although we expressed concern with the prosecutor's comment, we concluded, when viewed in the context of the entire proceeding, the prosecutor's argument regarding the lack of physical evidence did not affect the jury's ability to judge the evidence fairly. *Id.* at ¶ 17. We also said the prejudice, if any, that resulted from the prosecutor's argument was minimized by jury instructions, and we concluded the State's closing argument did not deny the defendant a fair trial. *Id.* at ¶ 17.

[¶ 14] In *State v. Marks*, 452 N.W.2d 298, 299 (N.D.1990), a prosecutor argued that if the defendant thought there was something wrong with the toxicologist's methodology for a blood test, the defendant could have obtained the remainder of the blood sample for her own test. On appeal, the defendant argued the prosecutor's comments suggested the burden of proof had shifted to the defendant. *Id.* at 299–303. We concluded the trial court did not abuse its discretion in denying the defendant a new trial, because the jury was instructed that counsel's arguments were not evidence and the State had the burden to prove the essential elements of the offense beyond a reasonable doubt, and the alleged improper statement re-

ceived brief attention in the context of the entire closing argument. *Id.* at 303.

[¶ 15] Here, the trial court instructed the jury the "State must prove, beyond a reasonable doubt, that the defendant was not acting in self-defense and that his conduct was not excused." In defining the offenses of aggravated assault, assault, and simple assault, the court instructed the jury, in part, that the prosecution satisfied its burden as to each of those offenses only if the evidence showed beyond a reasonable doubt that Clark was not acting in self defense and did not have a defense of excuse. The court also instructed the jury that Clark's conduct was excused if he believed the facts were such that his conduct was necessary and appropriate for any of the purposes which establish self-defense, even though his belief was mistaken, and if Clark's belief was recklessly held, his conduct was not excused.

[¶ 16] On this record and in view of the court's instructions about counsel's arguments and the burden of proof, we conclude Clark's claims about shifting the burden of proof do not rise to the level of obvious error.

### C

[¶ 17] Clark argues obvious error was committed when the prosecutor argued that "Sheriff Charging testified that basically he has to take the word of Larry Clark with a grain of salt based on his background when he called him and said he assaulted somebody, he didn't know if it was true because he knows Larry." Clark argues the prosecutor's argument was an improper comment on facts not in evidence, and it was improper to assert that Sheriff Charging knew Clark and did not believe him. Clark argues Sheriff Charging never testified that Clark used the word "assault." Rather, Clark argues Sheriff Charging testified Clark had called

him in reference to an individual Clark had hit and wanted to know if there was a report about it. Clark argues it was improper to characterize Sheriff Charging's testimony that Clark "hit an individual" as testimony of an "assault."

[¶ 18] There was evidence Clark called Sheriff Charging shortly after the incident, and Sheriff Charging testified Clark said he "hit" someone. Sheriff Charging testified Gerou later reported an assault. Sheriff Charging also testified he was "skeptical" about what Clark said during the telephone call. We conclude the prosecutor's argument was not beyond the bounds of any fair and reasonable comment about the evidence, and we reject Clark's claims the prosecutor's arguments about Sheriff Charging's testimony constitute obvious error.

### D

[¶ 19] Clark also argues the prosecutor's argument violated the "golden rule" because the prosecutor asked the jurors to place themselves in the shoes of the complaining witness. The State argues it was fairly responding to Clark's counsel's "golden rule" argument.

[¶ 20] During closing argument, Clark's counsel asked the jury to put themselves in Clark's shoes on the day of the incident. During rebuttal argument, the prosecutor responded "if you put yourself in Mr. Clark's shoes for the defense, I'm going to ask you now to put yourself in Mr. Gerou's shoes as you sit there strapped in that seat and this guy comes up here and starts hitting you with that motorcycle helmet on."

[¶ 21] A "golden rule" argument asks jurors to place themselves in the shoes of a party, and is improper and should be avoided in both civil and criminal actions. *State v. Carlson,* 1997 ND 7, ¶ 46,

559 N.W.2d 802. However, a defendant may not claim error for arguments that are invited. *Evans,* 1999 ND 70, ¶ 14, 593 N.W.2d 336; *Marks,* 452 N.W.2d at 300–01; *Schimmel,* 409 N.W.2d at 342–43. In *Evans,* at ¶ 14, we said courts often decline to reverse convictions challenging a prosecutor's improper remarks if those remarks were invited in response to improper remarks by defense counsel. In determining if a prosecutor's invited response unfairly prejudiced the defendant, courts weigh the impact of the prosecutor's remarks and take into account defense counsel's opening salvo. *Id.* If a prosecutor's remarks were invited and did no more than respond substantially in order to right the scale, those comments do not warrant reversal of a conviction. *Id.*

[¶ 22] In this case, the State should have objected to Clark's counsel's improper argument. We conclude, however, the prosecutor's argument was an invited response to Clark's counsel's improper argument and did no more than to respond substantially in order to right the scale. Although two wrongs do not make a right, *see Evans,* 1999 ND 70, ¶ 14, 593 N.W.2d 336, under these circumstances we conclude the prosecutor's argument was not obvious error.

### III

[¶ 23] We affirm Clark's conviction.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., and KIRK SMITH, Surrogate Judge, concur.

[¶ 25] The Honorable KIRK SMITH, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.