2006 ND 192

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Zachary SCHMIDKUNZ, Defendant and Appellant.**

**No. 20050141.**

Supreme Court of North Dakota.

Sept. 13, 2006.

John P. Van Grinsven III, State's Attorney, Minot, N.D., for plaintiff and appellee.

Chad Rory McCabe, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Zachary Schmidkunz appealed from a criminal judgment entered after a jury found him guilty of murder, a Class AA Felony. We conclude the prosecutor's improper comments during closing arguments did not constitute obvious error, the district court did not abuse its discretion in admitting testimony by the State's expert witness, and the district court did not abuse its discretion in making comments to the jury before deliberations or in permitting the State's expert to testify regarding his competency evaluation of Schmidkunz. We affirm.

I

[¶ 2] On November 17, 2003, Minot police were dispatched to Schmidkunz's parents' residence after his parents contacted police upon discovering the body of a dead woman in their basement. Police officers determined the woman had been shot with a shotgun. Further investigation revealed a shotgun belonging to Zachary Schmidkunz on a bed in the basement. Zachary Schmidkunz was not at his parents' house, and his mother indicated she had last spoken with him by telephone earlier that day.

[¶ 3] Later that evening Schmidkunz surrendered to Jamestown law enforcement officers and claimed to have shot a woman in Minot. Upon confirming that a shooting had occurred in Minot, Jamestown law enforcement officers placed Schmidkunz under arrest. Schmidkunz was interviewed and gave a handwritten statement to Jamestown law enforcement officers, providing information and details implicating him in the shooting. A typed transcript of Schmidkunz's interview with Jamestown law enforcement officers was received at his subsequent trial, as well as his handwritten statement and his sketch of the basement.

[¶ 4] The State charged Schmidkunz with Class AA Felony murder. During trial, Schmidkunz presented expert testimony from Dr. Maureen Hackett. Dr. Hackett testified that, in her opinion, "Schmidkunz was in a state of mind of an 'automaton' that was induced by extreme physiologic excitement fueled by a reaction to a medication withdrawal that created an extreme worsening of his psychiatric symptoms and a sudden onset of novel rage resulting in a prolonged episode of extreme emotional disturbance." The State provided rebuttal testimony from Dr. Joseph Belanger and Dr. James Roerig addressing Dr. Hackett's testimony about Schmidkunz's competency. A jury convicted Schmidkunz of the charge of murder. Schmidkunz appealed from the criminal judgment entered upon the jury verdict.

II

[¶ 5] Schmidkunz argues the prosecutor's improper comments during closing argument constitute obvious error and require reversal of his conviction. Schmidkunz argues the prosecutor referred to taped recordings by Schmidkunz's expert witness, Dr. Hackett, which were made during her interviews of Schmidkunz and were not admitted into evidence. Schmidkunz concedes, however, he did not object to the prosecutor's comments during closing argument and our review of this issue is for obvious error.

[¶ 6] "This Court exercises its authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice." *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765 (citing *State v. Anderson*, 2003 ND 30, ¶ 8, 657 N.W.2d 245, and *State v. Evans*, 1999 ND 70, ¶ 9, 593 N.W.2d 336). In analyzing obvious error claims under North Dakota law, we have

applied a plain error framework, explaining an appellate court may notice a claimed error that was not brought to the district court's attention if there was "(1) error, (2) that is plain, and (3) affects substantial rights." *State v. Olander*, 1998 ND 50, ¶¶ 13–14, 575 N.W.2d 658. Once the defendant establishes that a forfeited plain error affects substantial rights, this Court has discretion to correct the error, and should correct the error where it seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* at ¶ 16.

[¶ 7] In controlling the scope of closing argument, the district court is vested with discretion, and absent a clear showing of an abuse of discretion, we will not reverse on grounds the prosecutor exceeded the scope of permissible closing argument. *Clark*, 2004 ND 85, ¶ 7, 678 N.W.2d 765. Unless the error is fundamental, a defendant must demonstrate a prosecutor's comments during closing argument were improper and prejudicial. *Id.* In order to be prejudicial, the improper closing argument must have "stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Id.* (citing *Evans*, 1999 ND 70, ¶ 11, 593 N.W.2d 336).

[¶ 8] Here, Schmidkunz's expert witness, Dr. Hackett, tape-recorded approximately six and a half hours of her interviews with him. In cross-examining Dr. Hackett, the prosecutor played a portion of those taped interviews. The recordings themselves, however, were not admitted into evidence.

[¶ 9] During closing argument, the prosecutor argued:

[Dr. Hackett] testified in direct she liked to make these tapes because she could go back and review them. Remember I told you in my opening statement a lot of this information the State didn't get until three weeks before trial, inundated with material. Had to pour through them.

But we made time to listen to the tapes. And the thing that stuck out in my mind—you read her report, the first report. Nowhere in that tape or in that report, excuse me, does she mention that he advised her on the tape he took a pill on Sunday.

That was important because, you know, you heard in this discontinuation syndrome, which was their defense, that the best thing you can do is reintroduce the drug. And within 24 hours it will—things were going to get better. But somehow that didn't make it in here. She said I obviously would have put it in there.

Was it an oversight or was it because it just didn't fit? That is your call. But it doesn't help the theory. Certainly it doesn't.

*And we played the tape. I would have played the tape all day. There were other things I would have liked to have shown on the tape.*

(Emphasis added.)

[¶ 10] Schmidkunz argues the prosecutor's comments were improper because the State cannot rely or comment on facts not in evidence during closing argument. It is undisputed that the actual recordings of Dr. Hackett's interviews with Schmidkunz were not admitted into evidence so the evidence was limited to the portion of tape actually heard by the jury. We have previously expressed our concern when a prosecutor comments personally on evidence "because he or she is acting as an unsworn witness for the prosecution who is not subject to cross-examination and who may be perceived as an expert witness."

*State v. Skorick*, 2002 ND 190, ¶ 15, 653 N.W.2d 698 (citing *State v. Schimmel*, 409 N.W.2d 335, 343 (N.D.1987)). We have also stated that a prosecutor's improper statements of fact not supported by the evidence "are presumed to be prejudicial unless harmless in themselves." *Evans*, 1999 ND 70, ¶ 12, 593 N.W.2d 336 (quoting *State v. Mehralian*, 301 N.W.2d 409, 418 (N.D.1981)). In *Evans*, the prosecutor argued that the defendants had been identified on tape, without evidentiary support in the record. *Evans*, at ¶ 12. The issue of identification was disputed at trial, and the prosecutor's comments suggested the prosecutor knew of evidence that supported the charges but was not presented to the jury. *Id.* However, in *Evans*, the prejudicial effect of the prosecutor's improper comments was compounded by the district court's failure to admonish the jury to disregard the prosecutor's comments about the identification issue, which were not supported by any evidence. *Evans*, at ¶ 13.

[¶ 11] Here, the district court instructed the jury that statements by counsel were not to be considered evidence, any statements by counsel concerning facts not supported by the evidence were to be disregarded, and jury members were to rely on their own recollection or observation. *See, e.g., Clark*, 2004 ND 85, ¶ 11, 678 N.W.2d 765 (concluding any possible prejudice was minimized by the court's cautionary instruction and any isolated improper statements were not obvious error). Moreover, although the prosecutor's comments in closing arguments regarding the tapes were improper in suggesting they provided more evidence not heard by the jury, we cannot conclude that the comments were so prejudicial as to affect Schmidkunz's substantial rights. The evidence against Schmidkunz was overwhelming, and we cannot say that the prosecutor's single comment, which did not state

any specific evidentiary facts, carried with it enough weight to impact the jury's verdict and Schmidkunz's ability to receive a fair trial. Schmidkunz has failed to demonstrate the prosecutor's remarks affected his substantial rights.

[¶ 12] Based upon our review of the record, we are unable to conclude the State's improper comment in closing argument prejudiced Schmidkunz. We therefore, conclude Schmidkunz was not denied a fair trial by the prosecutor's comment and the claimed error does not rise to the level of obvious error requiring reversal.

### III

[¶ 13] Schmidkunz argues the district court committed reversible error by allowing the State's expert witness, Dr. Joseph Belanger, to testify to an element of the criminal charge. The State argues Dr. Belanger's testimony regarding criminal responsibility was appropriate under the circumstances.

[¶ 14] Rules 702 through 706 of the North Dakota Rules of Evidence govern the admissibility of expert testimony. "The test for admission of expert testimony is whether or not such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue and whether or not the witness is qualified as an expert." *State v. Fontaine*, 382 N.W.2d 374, 377 (N.D.1986). Under N.D.R.Ev. 702, an expert may testify to scientific, technical, or other specialized knowledge which will assist the trier of fact. Rule 704, N.D.R.Ev., specifically provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Thus, an expert is authorized to give his opinion even though it embraces an ultimate issue of fact to be decided by

the trier of fact. *See State v. Steinbach,* 1998 ND 18, ¶ 12, 575 N.W.2d 193. Rule 702, N.D.R.Ev., envisions "generous allowance" of the use of expert witness testimony where a witness is shown to have some degree of expertise in the field of which the expert testifies. *Steinbach,* at ¶ 12; *Anderson v. A.P.I. Co. of Minnesota,* 1997 ND 6, ¶ 9, 559 N.W.2d 204.

▓▓▓▓▓▓ [¶ 15] The ultimate decision whether to admit expert witness testimony rests within the district court's sound discretion. *Steinbach,* 1998 ND 18, ¶ 12, 575 N.W.2d 193; *Fontaine,* 382 N.W.2d at 377. We will not reverse the district court's decision on appeal unless the court has abused its discretion. *Steinbach,* at ¶ 12; *Fontaine,* at 377. "An abuse of discretion by the district court is never assumed, and the burden is on the party seeking relief affirmatively to establish it." *Nesvig v. Nesvig,* 2006 ND 66, ¶ 12, 712 N.W.2d 299. "The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

[¶ 16] Schmidkunz argues that Dr. Belanger improperly testified to the essential elements of murder and definitions of "intentionally" and "knowingly." Schmidkunz claims the district court erred in allowing Dr. Belanger to testify that Schmidkunz's conduct was insufficient to meet the mental disease and defect standard because Dr. Belanger "just read what it means to be knowingly." Schmidkunz asserts the testimony the State solicited from Dr. Belanger wrongfully invaded the province of the jury to determine Schmidkunz's mental state and guilt or innocence because that testimony addressed the essential elements of murder, the definitions of intentionally and knowingly, and his opinion that Schmidkunz's conduct was insufficient

to meet the appropriate standard for a mental disease and defect.

[¶ 17] Schmidkunz's argument relies on cases applying language from Fed.R.Evid. 704(b), which provides:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of the defense thereto. Such ultimate issues are matters for the trier of fact alone.

In 1984, Congress amended Fed.R.Evid. 704 to include that subsection. *See United States v. Alexander,* 805 F.2d 1458, 1460 n. 1, 1461 (11th Cir.1986) (explaining Rule 704 was amended by section 406 of the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, 98 Stat.2057, 2067, which is chapter IV of Title II of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat.1976). That subsection, however, has never been adopted in North Dakota, and the Joint Procedure Committee has specifically declined to recommend amending N.D.R.Ev. 704 to include that language. *See Minutes of the Joint Procedure Comm.* 19–20 (April 27–28, 2006); *Minutes of the Joint Procedure Comm.* 4 (Jan. 23, 1986). We decline to adopt that language by judicial decision. *See State v. Osier,* 1997 ND 170, ¶ 5 n. 1, 569 N.W.2d 441 (declining to adopt procedural rule by opinion in litigated appeal).

[¶ 18] We agree with the State's observation that N.D.C.C. §§ 12.1–04.1–03, 12.1–04.1–04, 12.1–04.1–13, and N.D.R.Crim.P. 12.2, specifically authorize the admission of evidence at trial relating to issues of lack of criminal responsibility or lack of state of mind as an element required for the alleged offense. Under those statutes, that type of testimony may be relevant and admissible, despite em-

bracing an ultimate issue for the trier of fact. In *State v. Jensen*, 251 N.W.2d 182, 189 (N.D.1977), this Court stated:

> Psychiatrists and other experts may testify as to their conclusions, even though based upon reports of psychologists not in evidence. N.D.R.Ev. 703; *Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D.1975).

> Psychiatrists and other experts may be allowed to testify to their opinions on the ultimate fact to be determined by the jury, namely, whether the defendant, at the time of the offense, had substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as of the time of the alleged offense. It is not a proper objection that an expert is testifying to an ultimate fact. N.D.R.Ev. 704. *Minot Sand & Gravel Co. v. Hjelle, supra.*

[¶ 19] Dr. Belanger's testimony was given in the rebuttal phase of the trial after the defense had presented its case. Dr. Belanger testified after Dr. Hackett testified and provided evidence relating to Schmidkunz's intent, referring to the specific terms in the statute defining the elements for the charged offense and Schmidkunz's state of mind for his criminal responsibility.

[¶ 20] Under N.D.R.Ev. 704, Dr. Belanger's testimony is the type of testimony that would assist the trier of fact even though it may embrace an ultimate issue to be decided by the jury. We conclude the district court did not abuse its discretion in admitting Dr. Belanger's expert testimony.

## IV

[¶ 21] Schmidkunz argues the district court's comments to the jury before deliberations caused a forced or coerced verdict. At the close of evidence the district court told the jury:

> Let me further advise that in all likelihood we will not have the attorneys' closing arguments today. We will start with those at nine o'clock tomorrow morning. Now, on the assumption that process will be over about noon, you will then be in charge of the bailiffs, and you will start your deliberations. You will have to give up your telephones for as long as it takes you. And it is my policy to the extent possible for you to continue deliberation right through until you reach a verdict or until the time gets too unreasonable.

> The reason I am telling you all this is so you can plan your Friday or alert those people that you may have to alert that potential exists that you will be working after five o'clock on Friday. I don't know if that will be necessary. But you have a right to plan your lives.

After the final jury instructions, the court said:

> I will advise you that I have no way of knowing how long the deliberations will take. It is my intention that you will in all likelihood receive or start deliberations some time mid-forenoon. And it is my intention that you will deliberate— getting a chance to have a noon break or noon food brought in, or something—but deliberate until you come up with a verdict. I advise you this so that you might know that deliberations, if it takes that long, [are] not going to stop at five o'clock tomorrow night, and you can consequently notify your families of that potential.

Schmidkunz claims the verdict was forced or coerced because after an almost two-week trial, the jury returned a verdict in about three hours. Schmidkunz did not object to either comment. Thus we are limited to a review for obvious error. *See*

*State v. Bertram,* 2006 ND 10, ¶ 17, 708 N.W.2d 913.

 [¶ 22] The district court has broad discretion over the conduct of a trial, which includes scheduling the time for jury deliberations, but the court must exercise its discretion in a manner that best comports with substantial justice. *State v. Parisien,* 2005 ND 152, ¶ 11, 703 N.W.2d 306. "[T]he mere length of time a jury is kept in deliberations, in itself, does not establish that a verdict was coerced . . . ." *Id.* (internal quotation omitted).

[¶ 23] In our view, the court's statements to the jury merely informed the jury of the anticipated schedule for deliberations so the members of the jury could "plan your lives." Nothing in this record supports Schmidkunz's claims that the jury's verdict was forced or coerced. Based upon our review of the record, we conclude the district court did not coerce or force a verdict and did not abuse its discretion in advising the jury of the schedule for deliberations. Because we conclude the district court did not abuse its discretion, Schmidkunz cannot demonstrate an error under the obvious error analysis.

V

 [¶ 24] Schmidkunz argues the district court erred in admitting Dr. Belanger's testimony and his reports because his evaluation of Schmidkunz was audio-recorded, but not video-recorded.

[¶ 25] In support of his argument, Schmidkunz relies on language in N.D.C.C. § 12.1–04.1–08(1), which provides:

An examination of the defendant conducted under section 12.1–04.1–05 must be audio-recorded and, if ordered by the court, video-recorded. The manner of recording may be specified by rule or by court order in individual cases.

[¶ 26] Before trial, the district court had ordered that the State's examination of Schmidkunz be both audio-recorded and video-recorded. In August 2004, the State was notified by personnel at the State Hospital that the Hospital did not have the capability to videotape the examination and evaluation of Schmidkunz. The State sent a letter to the State Hospital indicating an audio-recording would be sufficient. The letter indicates it was also sent to Schmidkunz's counsel and filed with the court. In the State's supplemental discovery responses filed in October 2004, Dr. Belanger was listed as an expert witness for trial regarding the issue of lack of criminal responsibility or the requisite state of mind.

[¶ 27] During trial and just before Dr. Belanger's testimony, Schmidkunz objected to Dr. Belanger's testimony and reports, arguing that evidence was inadmissible because of the lack of a video-taped examination. The district court ruled that, "in spite of the fact the order was not strictly complied with," the State had provided timely notification upon learning video-recording capacity was not available and, further, that Schmidkunz had waived his right to object to the lack of a video-taped recording by failing to object, or take appropriate and timely action, to that procedure before trial.

[¶ 28] We conclude the district court's decision to admit Dr. Belanger's testimony was not arbitrary, unreasonable, or unconscionable and was the product of a rational mental process. We therefore conclude the court did not abuse its discretion in admitting Dr. Belanger's testimony and reports into evidence.

VI

[¶ 29] The district court judgment is affirmed.

[¶ 30] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.