2007 ND 132

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Andrew Brice MUHLE, Defendant and Appellant.**

**No. 20060328.**

Supreme Court of North Dakota.

Aug. 22, 2007.

Mark Rainer Boening, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Monty Grant Mertz, Fargo, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Andrew Brice Muhle appeals from the criminal judgment entered after a jury found him guilty of two counts of gross sexual imposition and one count of abuse or neglect of a child. We affirm, concluding that the district court did not abuse its discretion in admitting the children's out-of-court statements and did not violate Muhle's constitutional right to confront his accusers, that the State's failure to disclose a witness's pre-trial statement did not violate Muhle's right to a fair trial, that prosecutorial misconduct did not warrant reversal of the judgment, and that sufficient evidence supports Muhle's conviction on the class AA felony count of gross sexual imposition.

I

[¶ 2] Relevant facts are provided in our decision regarding Shannon Muhle's appeal, *State v. Muhle,* 2007 ND 131, and we will not repeat these facts here except as necessary to resolve the issues raised in this appeal.

[¶ 3] In October 2005, Muhle was charged with one count of gross sexual imposition as a class AA felony, one count of gross sexual imposition as a class A felony, and one count of abuse or neglect of a child, a class B felony. Andrew Muhle and his wife, Shannon Muhle, lived in West Fargo with their three minor children, a daughter, S.M., and two sons, K.E. and G.E. Andrew Muhle is not the biological father of K.E. or G.E. In August 2005, an investigation began when Detective Tim Runcorn of the West Fargo police department and Tammy Anderson from Cass County Social Services interviewed the three children.

[¶ 4] As a result of the investigation, both Andrew Muhle and Shannon Muhle were charged with criminal offenses. Before trial, the State made a motion to determine the admissibility of the children's statements about sexual abuse, and the district court held a hearing on May 1, 2006. The court issued a memorandum opinion and order holding S.M.'s and K.E.'s prior statements about sexual abuse to be admissible if they testified at trial, although the Court did redact a portion of K.E.'s statement. The district court did not rule on the admissibility of G.E.'s statement since the State no longer intended to offer G.E.'s out-of court statement at trial. The district court also held a hearing to determine whether the children were competent to testify, determining they were.

[¶ 5] In May 2006, Andrew Muhle and Shannon Muhle were tried together before a jury and were convicted. In November 2006, the court sentenced the Muhles. Andrew Muhle and Shannon Muhle have proceeded separately on appeal.

## II

[¶ 6] Muhle argues the district court abused its discretion by admitting the children's out-of-court statements and violated Muhle's constitutional right to confront his accusers.

## A

[¶ 7] We review the district court's evidentiary ruling for an abuse of discretion. *State v. Sevigny,* 2006 ND 211, ¶ 24, 722 N.W.2d 515. "A district court abuses its discretion when it 'acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law.'" *Id.* (quoting *State v. Ramsey,* 2005 ND 42, ¶ 8, 692 N.W.2d 498).

[¶ 8] Here, the State offered and the district court admitted into evidence the audiotape recordings of the interviews with S.M. and K.E. Although the jury was also given transcripts of these interviews, the transcripts were not admitted into evidence. In *State v. Muhle,* 2007 ND 131, ¶¶ 10–18, we addressed the district court's decision in this case to admit S.M.'s and K.E.'s prior out-of-court statements into evidence and concluded the court did not abuse its discretion. We adhere to that conclusion.

[¶ 9] The State also offered testimony at trial from Dr. Alonna Norberg, who examined S.M., in addition to Dr. Norberg's medical report. Muhle suggests that N.D.R.Ev. 803(4), which provides an exception to exclusion by the hearsay rule for statements made for purposes of medical diagnosis or treatment, should not apply to portions of Dr. Norberg's medical report that Muhle describes as "interrogation."

[¶ 10] Muhle asserts that Dr. Norberg is the medical director of the Red River Valley Children's Advocacy Center and that the entire examination was done for purposes of investigation and prosecution. Muhle asserts there is no evidence that Dr. Norberg had ever been S.M.'s doctor

at any time prior to the investigation. However, N.D.R.Ev. 803(4) provides an exception to the hearsay rule for: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

[¶ 11]   This Court has previously addressed treatment in sexual assault cases:

> In addition to diagnosing and treating such physical injuries as cuts or bruises, health care providers examining one claiming to be the victim of a sexual assault must diagnose whether or not the alleged victim has suffered psychological trauma and, if so, its nature and extent, and treat that as well. The intensity of psychological trauma suffered by the victim of a sexual assault may vary, depending upon such things as the location of the attack, the kind and degree of restraint of movement or force used, or the imposition of fear through an assailant's admonition to the victim not to tell anyone. Thus, such matters are "reasonably pertinent to diagnosis and treatment" and statements about them are admissible under Rule 803(4), N.D.R.Ev.

*State v. Weatherspoon,* 1998 ND 148, ¶ 16, 583 N.W.2d 391 (quoting *State v. Janda,* 397 N.W.2d 59, 63 (N.D.1986)). While Muhle contends that this exception to the hearsay rule should not apply to the "interrogation portion" of the medical report, the rule also permits statements describing "the inception or general character of the cause or external source thereof." There is also no requirement that the physician must have been the person's doctor at any time prior to the examination. Moreover, such questions regarding the

cause or external source of symptoms or pain, including S.M.'s responses to those questions, fall within N.D.R.Ev. 803(4).

[¶ 12]   In this case, the district court had sufficient evidence to assess the reliability of the children's out-of-court statements. After reviewing the record, we conclude the district court did not abuse its discretion either in admitting the children's out-of-court statements or in admitting Dr. Norberg's testimony and medical report at trial.

### B

[¶ 13]   Muhle argues that his Sixth Amendment right to confront his accusers was violated by permitting the children's out-of-court statements to be admitted into evidence. Muhle specifically asks this Court to reconsider our holding in *Sevigny,* 2006 ND 211, 722 N.W.2d 515, based upon his assertion that cross-examination of a small child is "nearly impossible" and that a child cannot be "effectively" cross-examined on prior statements.

[¶ 14]   We review de novo for violations of constitutional rights. *Sevigny,* 2006 ND 211, ¶ 28, 722 N.W.2d 515. We considered the issue raised by Muhle in *Sevigny,* at ¶ 29:

> In [*State v.*] *Blue,* 2006 ND 134, ¶ 7, 717 N.W.2d 558, we clarified when a witness testifying to a child's out-of-court statements about sexual abuse violates a defendant's constitutional right to confront his accuser. We held an out-of-court testimonial statement may not be admitted into evidence when the child is unavailable to testify unless the defendant has had an opportunity to cross-examine the child. *Id.* at ¶ 8. We also said,
>
> > If a defendant has an opportunity to cross-examine the witness at trial, the admission of testimonial statements

would not violate the Confrontation Clause. The core constitutional problem is eliminated when there is confrontation. *Crawford* makes clear that, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements...."

*Id.* at ¶ 23 (citations omitted) (quoting *Crawford v. Washington*, 541 U.S. 36, 59–60 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). In this case, S.S. and S.J.M. both testified at the trial and Sevigny had the opportunity to cross-examine both children. We conclude Sevigny's Sixth Amendment rights were not violated.

[¶ 15] In *Sevigny*, at ¶ 29, this Court concluded the defendant's Sixth Amendment rights were not violated because both of the child victims testified and were subject to cross-examination by the defendant. As in *Sevigny*, the children in this case, S.M., K.E., and G.E., all testified at trial. Muhle also had the opportunity to cross-examine the children.

[¶ 16] We recognize there may be difficulty in cross-examining some children; however, this difficulty concerns the competency of the child to testify. The district court in this case found all three children competent to testify at trial. We reject Muhle's assertion that cross-examination is, as a matter of law, impossible or ineffective when a child witness is involved, or that a child's out-of-court testimonial statements that are not subject to "effective" cross-examination at the time they were given should never be admitted as substantive evidence.

[¶ 17] Although Muhle argues that the children's out-of-court statements, including the physician's testimony and medical report, are testimonial in nature, all three children and Dr. Norberg testified at the trial. We decline Muhle's invitation to reconsider *Sevigny*. We conclude Muhle's Sixth Amendment rights were not violated.

### III

[¶ 18] Muhle asserts the State violated his right to a fair trial by failing to disclose a witness's pre-trial statement in violation of N.D.R.Crim.P. 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[¶ 19] Muhle asserts his rights were violated because the State failed to inform him about a change in G.E.'s testimony, which the State had learned after an interview with K.E. and G.E. several days before the trial. As a result of the interview, the prosecutor disclosed to Muhle's defense attorney that K.E. had retracted some earlier statements, but said nothing about a change in G.E.'s testimony. During the interview, G.E. indicated to the prosecutor that he had actually had sex with his mother, co-defendant Shannon Muhle. Although the State notified respective counsel for both defendants Muhle and Shannon Muhle that K.E.'s testimony would change from K.E.'s August 2005 statement, the State did not notify the defendants before trial of G.E.'s statement that he had sex with his mother.

[¶ 20] At trial, G.E. testified on direct examination that his father had shown him a game called sex, that he and K.E. practiced the sex game with S.M., that his father said that G.E. could practice the sex game with his mother Shannon Muhle, and that he had actually had sex with his mother. Both Detective Tim Runcorn and Tammy Anderson were cross-examined by Muhle's attorney, and both testified that G.E. had made no mention of having sex with his mother when Tammy Anderson had interviewed G.E. in August 2005.

654

[¶ 21] The day following G.E.'s testimony during trial, Muhle's attorney argued to the court that the State had violated N.D.R.Crim.P. 16 and that the court could either grant a mistrial, grant a continuance, or instruct the jury to disregard G.E.'s testimony. Muhle then moved for a mistrial. The district court denied Muhle's request.

A

[¶ 22] In criminal cases, discovery is governed by N.D.R.Crim.P. 16. *State v. Loughead*, 2007 ND 16, ¶ 17, 726 N.W.2d 859. "Under N.D.R.Crim.P. 16, the prosecution must disclose, upon the defendant's request, statements of the defendant, the defendant's previous record, documents and objects, any reports of examinations and tests, and any information concerning expert witnesses within the prosecution's possession, custody, or control." *Id.; see also State v. Thorson*, 2003 ND 76, ¶ 10, 660 N.W.2d 581.

[¶ 23] While not a constitutional mandate, Rule 16 is designed to further the interests of fairness. *City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 16, 658 N.W.2d 731. "Although the trial court may impose sanctions for a failure to comply with Rule 16, including prohibiting the delinquent party from introducing into evidence the material not disclosed under N.D.R.Crim.P. 16(d)(2), before the issue of sanctions becomes relevant there must be a threshold determination that Rule 16 was violated." *State v. Charette*, 2004 ND 187, ¶ 16, 687 N.W.2d 484. "Rule 16(f)(1) requires only 'statements' be disclosed by the prosecution. 'Statement' is defined quite technically and tends to emphasize formal, written, or recorded declarations." *Id.* at ¶ 17 (citing N.D.R.Crim.P. 16(f)(4) and applying a similar version of the subsection prior to its March 1, 2006, amendments). *See also State v. Ebach*, 1999 ND

5, ¶ 20, 589 N.W.2d 566 (holding Rule 16 does not apply to oral statements other than statements of the defendant).

[¶ 24] Here, the record reflects that the prosecutor's interview of G.E. was conducted several days before trial, and the statements made by G.E. at that time were neither recorded nor reduced to writing. Thus, there is no indication that G.E. made a formal "statement" as contemplated by Rule 16. We conclude the State's failure to inform Muhle of G.E.'s statement was not a violation of N.D.R.Crim.P. 16. *See also Muhle*, 2007 ND 131, ¶¶ 23–30.

B

[¶ 25] Muhle also asserts that the State's failure to disclose G.E.'s statement constitutes a *Brady* violation. This Court recently explained the *Brady* standard in *Rümmer v. State*, 2006 ND 216, ¶ 21, 722 N.W.2d 528:

"In *Brady [v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment." *Syvertson v. State*, 2005 ND 128, ¶ 6, 699 N.W.2d 855 (quoting *City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 9, 658 N.W.2d 731). To establish a *Brady* violation, the defendant must prove: " '(1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed.' " *Syvertson*, at ¶ 6 (quoting *State v. Goulet*, 1999 ND 80, ¶ 15, 593 N.W.2d 345).

[¶ 26] In support of his argument, Muhle asserts that the "new statements by G.E." just before trial were favorable to the defendant in that they were completely inconsistent with G.E.'s prior interviews, that Muhle would have been able to better prepare for cross-examination and his testimony if he had known of the inconsistency, and that he had "no way to anticipate this new evidence."

[¶ 27] The United States Supreme Court has held evidence that can be used to impeach a witness is subject to disclosure under *Brady*. *See Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (stating that the duty under *Brady* "encompasses impeachment evidence as well as exculpatory evidence"); *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (holding impeachment evidence falls within the *Brady* rule). *See, e.g., Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 556 (4th Cir.1999) (holding witness's prior inconsistent statement about whether he was an eyewitness was evidence favorable to the defendant, establishing *Brady* violation's first requirement). Furthermore, "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527 U.S. at 280, 119 S.Ct. 1936 (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. 3375).

[¶ 28] Although Muhle raises the *Brady* issue on appeal, Muhle's counsel conceded that G.E.'s statement implicating co-defendant Shannon Muhle was not favorable to Andrew Muhle during arguments before the trial court. Specifically, Muhle's trial counsel stated: "Judge, in regard to the Brady issue, my position would be that Brady deals with evidence favorable to the defendant. So I understand the rationale for the argument, but I don't really believe Brady is applicable to this situation." Notwithstanding this statement and assuming for purposes of argument that Muhle did not waive the *Brady* issue at trial and that G.E.'s inconsistent statement several days before trial was favorable to him, Muhle has still failed to establish a *Brady* violation.

[¶ 29] Despite Muhle's bare-bones contention that he would have been able to better cross-examine witnesses and better able to prepare to testify at trial, Muhle knew the identity of the witnesses before trial. Muhle has not argued that he could not have learned the same information from interviewing G.E. nor that he could not have otherwise discovered the inconsistent statement with reasonable diligence. More importantly, however, there has been no showing of "materiality" demonstrating that the result of the proceeding would have been different.

[¶ 30] Ultimately, G.E. testified at trial and Muhle had the opportunity to cross-examine him on any inconsistent statements for purposes of impeaching G.E.'s credibility before the jury. Muhle has not explained how his trial preparation would have improved to the point of changing the result, nor did Muhle seek a continuance of the trial after the G.E.'s testimony incriminating Shannon Muhle.

[¶ 31] Based upon our review of the record, Muhle has not established that the result of the proceeding would have been different had the State disclosed G.E.'s oral statement made several days before trial. We conclude Muhle has failed to establish a *Brady* violation.

IV

[¶ 32] Muhle argues the judgment should be reversed because of prosecutorial misconduct. Muhle argues that the State's failure to disclose G.E.'s statement amounts to prosecutorial misconduct.

However, we have concluded that the State's actions did not constitute either a N.D.R.Crim.P. 16 discovery violation or a *Brady* violation.

A

[¶ 33] Muhle further asserts that the State committed prosecutorial misconduct by violating the court's sequestration order and by making certain comments in the State's closing argument. During trial, Muhle established that the prosecutor had discussed the testimony of the children with two of the State's other witnesses, which violated the court's sequestration order. Muhle's argument is primarily based upon N.D.R.Ev. 615, which provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. This rule does not authorize exclusion of (i) a party who is a natural person, or (ii) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (iii) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

[¶ 34] "It is mandatory to order exclusion of witnesses when requested by a party." *State v. Skorick*, 2002 ND 190, ¶ 4, 653 N.W.2d 698. The sequestration rule's purpose is to prevent witnesses from tailoring their testimony to what has already been presented and to assist in detecting less than candid testimony. *Id.* at ¶ 9.

[¶ 35] We review the district court's decision to permit a witness to testify even though the witness heard prior testimony in violation of a sequestration order under an abuse of discretion standard. *Skorick*, 2002 ND 190, ¶ 8, 653 N.W.2d 698. "If the objecting party clearly shows, by offer of proof or other appropriate means, a witness's testimony would be influenced by prior testimony the witness heard in violation of a sequestration order, it would be an abuse of discretion for the court to allow the witness to testify." *State v. Hill*, 1999 ND 26, ¶ 14, 590 N.W.2d 187.

[¶ 36] Here, Muhle is not arguing the district court abused its discretion in permitting the State's witnesses to testify after the prosecutor discussed the children's testimony with the witnesses. Rather, he argues the prosecutor's conduct denied him a fair trial. Indeed, the district court determined that the State had violated its sequestration order and, further, gave the jury a curative instruction. Specifically, the jury instruction stated:

> At the beginning of the trial, the Court entered a sequestration order. A sequestration order is an order that potential witnesses may not listen to or discuss the testimony of other witnesses prior to their own testimony. The purpose of a sequestration order is to prevent witnesses from shaping their testimony to make that testimony more consistent with the testimony of other witnesses. During the testimony of Tamara Anderson she disclosed that she had discussed the testimony of the minor children, S.M. and K.E., with the prosecutor prior to Ms. Anderson's testimony. During the testimony of Dr. Alonna Norberg, she indicated that someone had told her about S.M.'s testimony prior to Dr. Norberg's testimony. Both of these are violations of the Court's sequestration order. You may take these violations into account when weighing the credibility of Ms. Anderson's and Dr. Norberg's testimony.

[¶ 37]  At trial, Muhle's counsel did not object to the court giving this jury instruction.  Muhle also has not shown that the witnesses' testimony was influenced by the prosecutor's discussion of the children's testimony.  Muhle had the opportunity to cross-examine these witnesses, and the jury was alerted to the potential for the testimony to be affected and could factor this into the determination of the witnesses' credibility.

[¶ 38]  While we do not condone the prosecutor's violation of the court's sequestration order, we hold it did not amount to prosecutorial misconduct which denied Muhle a fair trial.

### B

[¶ 39]  Muhle asserts that the State committed prosecutorial misconduct which deprived him of a fair trial when the prosecutor discussed certain testimony during closing argument.  Muhle concedes he did not object to the prosecutor's comments during closing argument and, consequently, our review of this issue is for obvious error.

[¶ 40]  This Court exercises its authority to notice obvious error cautiously and only in exceptional circumstances when the defendant has suffered a serious injustice.  *State v. Schmidkunz,* 2006 ND 192, ¶ 6, 721 N.W.2d 387.  "In analyzing obvious error claims under North Dakota law, we have applied a plain error framework, explaining an appellate court may notice a claimed error that was not brought to the district court's attention if there was '(1) error, (2) that is plain, and (3) affects substantial rights.' "  *Id.* (quoting *State v. Olander,* 1998 ND 50, ¶¶ 13–14, 575 N.W.2d 658).  Once the defendant establishes a forfeited plain error affects substantial rights, we have the discretion to correct the error where it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Olander,* at ¶ 16.

[¶ 41]  A district court is vested with discretion in controlling the scope of closing argument, and this Court will not reverse on grounds the prosecutor exceeded the scope of permissible closing argument absent a clear showing of an abuse of discretion.  *Schmidkunz,* at ¶ 7; *State v. Clark,* 2004 ND 85, ¶ 6, 678 N.W.2d 765.  "Unless the error is fundamental, a defendant must demonstrate a prosecutor's comments during closing argument were improper and prejudicial."  *Schmidkunz,* at ¶ 7.  "In order to be prejudicial, the improper closing argument must have 'stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence.' "  *Id. See also Skorick,* 2002 ND 190, ¶ 17, 653 N.W.2d 698 (stating, "When reviewing to determine if the comment or remark was so offensive to prejudice the defendant, we need to consider all of the evidence presented at trial.")

[¶ 42]  Muhle argues the prosecutor's improper comments concerned evidence of the specific dates the offenses occurred:

You'll note that we really didn't try to pin down, we didn't try to charge either defendant with committing a specific act on a specific date.  And I think you can—you could hear why when S.M., K.E. and G.E. testified in this case.  That's simply something that's very difficult for children to specify.  They have problems with time in general.  Even knowing what time it is.  You'll recall when children learn to tell time with their watch.  It's not something they're born with.  But, frankly, given the nature of their allegations, given the nature of what they say happened to them,

given the nature of the repeated acts that occurred in this case, it simply isn't possible for them to be specific with regard to a date. Nor would it likely be possible for an adult to be specific with regard to a date. Consider for example law enforcement interviewing an adult victim of repeated offenses over a long period of time. Could the adult specify the specific dates on which each offense occurred? The specific day of the week, the specific day of the month? No, it would be extremely difficult. For example, if any investigator asked any adult tell me all the occasions on which you engaged in sexual intercourse with your partner within the past year, what adult would be able to specify to an investigator the specific date on which they engaged in, for example, consensual relations with their partner? Almost impossible. Certainly impossible for children. It's why in this case we charge the defendants with having committed at least one count of the offense in a broad window of time. Based on their testimony, it happened once, it happened more than once. *We submit that the State certainly has not overcharged the defendant in this case. We haven't charged the defendant with every occasion on which these acts took place partly because we can't be more specific about the date. To that extent it seems to me that in charging this case we've been more than fair to the defendants.* Where did it happen? When did it happen? Well, I think the children were all pretty consistent in their testimony in describing that it took place in their residence.

(Emphasis added.)

[¶ 43] Muhle asserts the only purpose for the prosecutor's statements was to improperly influence the jury "as to what they could consider" and by suggesting that the State has already gone "easy" on the defendants. However, viewing the prosecutor's comments within the complete context of the argument, we believe the prosecutor, although somewhat inartfully, was arguing the difficulties in proving the specific dates on which the incidents occurred rather than suggesting additional charges would have been appropriate. The district court also provided a jury instruction that "argument or other remarks of an attorney" must not be considered as evidence. Within the context of the prosecutor's comments, we conclude the State did not exceed the scope of permissible argument.

[¶ 44] Because Muhle failed to demonstrate obvious error in the prosecutor's comments during closing argument, and in light of the court's instructions to the jury, we conclude Muhle was not deprived of a fair trial and has failed to establish prosecutorial misconduct such that the trial's result would have been different.

V

[¶ 45] Muhle argues the evidence was insufficient to sustain his conviction for class AA felony gross sexual imposition in violation of N.D.C.C. § 12.1-20-03.

[¶ 46] Section 12.1-20-03, N.D.C.C., was amended effective August 1, 2005, to increase the penalty for gross sexual imposition from a class A felony to a class AA felony. The children were interviewed as a part of the investigation in this case on August 31, 2005, and the physician interviewed S.M. as a part of her examination on September 1, 2005. Muhle asserts that the State failed to prove that S.M. was abused on or after August 1, 2005.

[¶ 47] Muhle timely moved for a judgment of acquittal under N.D.R.Crim.P. 29, preserving the issue of sufficiency of the evidence for appellate review. *See State v. Austin,* 2007 ND 30,

¶ 24, 727 N.W.2d 790. Our standard of review of a sufficiency of the evidence claim gives deference to the jury's verdict. *Id.* "This Court will reverse a conviction on the ground of insufficient evidence only if, after viewing the evidence and all reasonable inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Steen*, 2000 ND 152, ¶ 17, 615 N.W.2d 555. On appeal, we will not weigh conflicting evidence and will not judge the credibility of witnesses. *State v. Klose*, 2003 ND 39, ¶ 19, 657 N.W.2d 276. Even if there is conflicting testimony or other explanations of the evidence, a jury may reach a guilty verdict beyond a reasonable doubt. *See State v. Krull*, 2005 ND 63, ¶ 14, 693 N.W.2d 631; *State v. Wilson*, 2004 ND 51, ¶ 9, 676 N.W.2d 98.

[¶ 48] There is evidence in the record supporting that abuse occurred in August 2005. Dr. Norberg's medical report of her medical examination of S.M. on September 1, 2005, states that when Dr. Norberg asked S.M. "if she ever has pain when she goes pee pee," S.M. responded "until tomorrow when I play game with Daddy." When Dr. Norberg asked S.M. if she was "having pain when she goes pee pee today," S.M. said "nope," but then added "on Saturday." Dr. Norberg then asked S.M. if she was "having pain in her bottom today," to which S.M. responded "yep."

[¶ 49] Further, in Dr. Norberg's trial testimony she said she observed a lacera-

tion, five millimeters in length and approximately two to three millimeters in depth, on S.M.'s perihymenal tissue and three fissures or abrasions along S.M.'s anus. Dr. Norberg testified that it was difficult to date the injuries she observed, but the injuries could have occurred "some time in August of 2005." She also testified the injuries were "most likely more recent in the last couple of weeks" prior to her examination of S.M.

[¶ 50] In this case, when viewed in a light most favorable to the verdict, the evidence supports the jury's verdict that a rational factfinder could have found beyond a reasonable doubt that count one occurred in August 2005. We therefore reject Muhle's claim that there was insufficient evidence to sustain his conviction for class AA felony gross sexual imposition under N.D.C.C. § 12.1–20–03.

## VI

[¶ 51] The district court judgment is affirmed.

[¶ 52] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.