2013 ND 8

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Vicente Erasno CHACANO, Defendant and Appellant.**

No. 20120187.

Supreme Court of North Dakota.

Jan. 23, 2013.

Rehearing Denied Feb. 26, 2013.

Jackson J. Lofgren (argued) and Brian D. Grosinger (appeared), Special Assistant State's Attorneys, Mandan, ND, for plaintiff and appellee.

Mark T. Blumer, Fargo, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Vincente Chacano appeals from a criminal judgment entered after a jury found him guilty of two counts of attempted murder. Because the trial court did not err in admitting an audio recording of the courtroom scuffle, sufficient evidence exists to sustain the convictions, and the prosecutor's improper statement in closing argument does not reach the level of obvious error, we affirm the criminal judgment.

I

[¶ 2] In February 2011, Chacano was on trial in Adams County, but he was not in custody of law enforcement. After closing arguments, Chacano left to eat lunch, and he returned to the courtroom in early afternoon when the jurors had reached a verdict. After the guilty verdicts were read, the jurors were polled and then excused. As the jurors began exiting the courtroom, Chacano produced a handgun. A scuffle ensued, and Chacano was subdued by Assistant North Dakota Attorney General Jonathan Byers and then Sheriff Eugene Molbert. The State charged Chacano with attempted murder of Byers, Molbert, and the twelve jurors.

[¶ 3] At trial, the State offered an audio recording of the courtroom scuffle and evidence Chacano had brought a loaded handgun and three clips containing thirty-eight rounds of ammunition into the courtroom. Byers testified that as the jury began to leave, he turned and Chacano pointed the gun at him and pulled the trigger. Byers testified Chacano appeared bewildered when the gun did not fire and began working the gun's action. Byers lunged at Chacano to disarm him. Molbert testified that as he ran at Chacano, Chacano pointed the gun at him as well. The gun did not go off, and Byers and Molbert subdued Chacano.

[¶ 4] Chacano testified he did not bring the gun into the courtroom to harm anyone. Chacano testified that the night before the incident, he planned to shoot a predator that had killed some chickens at his rural home. Chacano testified he was unable to find the predator, so he put the gun in his pickup and went back to town. He testified he was not feeling well and was under considerable stress because of the trial. As he returned to court after the lunch recess, Chacano testified he saw the gun in his pickup and tucked it behind his waistband, planning to put it under the vehicle seat when he arrived at the courthouse. Later realizing he had the gun with him in the courtroom, Chacano testified he got up to get rid of it, and his "body felt like electricity," he felt a pain in his head, and his "body was not responding." He testified he next remembers being on the floor. The jury found Chacano guilty of attempted murder of Byers and

Molbert and not guilty of attempted murder of the twelve jurors.

## II

[¶ 5] On appeal, Chacano argues the trial court erred by admitting the audio recording into evidence because it was not relevant, and even if it was relevant, its probative value was outweighed by unfair prejudice.

[¶ 6] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. "Relevant evidence is generally admissible." *State v. Cain*, 2011 ND 213, ¶ 31, 806 N.W.2d 597 (citing N.D.R.Ev. 402). However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." *Cain*, at ¶ 31 (quoting N.D.R.Ev. 403). A district court should exercise its power to exclude relevant evidence under N.D.R.Ev. 403 sparingly. *Cain*, at ¶ 31.

[¶ 7] "A district court has broad discretion in evidentiary matters, and [this Court] will not overturn a district court's decision to admit or exclude evidence unless the court abused its discretion." *State v. Jaster*, 2004 ND 223, ¶ 12, 690 N.W.2d 213 (citing *State v. Wiest*, 2001 ND 150, ¶ 9, 632 N.W.2d 812). "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law." *State v. Schmeets*, 2009 ND 163, ¶ 7, 772 N.W.2d 623 (citing *Jaster*, at ¶ 9). On appeal, "[t]he appellant bears the burden . . . of proving error." *Schmeets*, at ¶ 7 (quoting *State v. Raywalt*, 436 N.W.2d 234, 238 (N.D.1989)).

[¶ 8] Chacano moved pretrial to exclude the audio recording under N.D.R.Ev. 403; however, we are unable to find an objection based upon relevancy in the record. Although this Court will not address issues that are raised for the first time on appeal, "[a]n obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention." *State v. Clark*, 2012 ND 135, ¶ 26, 818 N.W.2d 739 (quoting N.D.R.Crim.P. 52(b)).

[¶ 9] "This Court exercises its authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice." *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765 (citation omitted). When analyzing claims of obvious error, this Court may "notice a claimed error that was not brought to the attention of a trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights." *Id*. If the defendant "establishes a forfeited plain error affects substantial rights, we have discretion to correct the error and should correct it if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. (citations and quotation omitted).

[¶ 10] To constitute obvious error, "[t]he error must be a clear deviation from an applicable legal rule under current law . . . ." *Clark*, 2012 ND 135, ¶ 26, 818 N.W.2d 739 (citation omitted). Chacano has not made this showing. The recording was highly relevant. The State used it to show that seconds after the jurors' dismissal Chacano pointed the gun at Byers, who had just successfully prosecuted Chacano, and pulled the trigger, illustrating motive and intent. To convict Chacano of attempted murder of the twelve jurors, the State had to prove Chacano intentionally took a substantial step toward intentionally or knowingly killing

each juror. Proving the jurors were still physically in the courtroom when Chacano produced the gun was a critical component of the State's case. A review of Chacano's trial strategy underscores this point. During the August 2011 preliminary hearing, Chacano's attorney repeatedly sought to establish the jurors had exited before the scuffle by questioning numerous witnesses whether the jurors were still in the courtroom when Chacano pulled the gun. At trial, Chacano's attorney asked Byers, the State's first trial witness, "[c]an you be sure that all ... 12 jurors were still in the courtroom?"

[¶ 11] Chacano argues the audio recording's probative value was outweighed by unfair prejudice and should have been excluded under N.D.R.Ev. 403 because "[t]he alarmed state of the persons heard on the tape could only inflame the passions of the jury...." We disagree. "Generally, any doubt about the existence of unfair prejudice ... should be resolved in favor of admitting the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonition in the charge." *State v. Randall*, 2002 ND 16, ¶ 15, 639 N.W.2d 439 (quotation omitted).

[¶ 12] The audio recording was highly probative for the same reasons it was relevant. Even if the audio recording had the potential to inflame the passions of the jury, to be excluded under Rule 403, its probative value had to be substantially outweighed by danger of unfair prejudice. This Court has stated even gruesome photos of a shotgun wound to the head at very close range were properly admitted because the "photographs were properly used to show the chain of events and the circumstances surrounding the murder." *State v. Klose*, 2003 ND 39, ¶ 30, 657 N.W.2d 276. This Court in *Klose* noted the district court, in accordance with N.D.R.Ev. 403, balanced the probative value against potential prejudice and required the more gruesome photographs to be cropped before being admitted. *Klose*, at ¶ 30. Similarly, in this case, the audio recording shows the chain of events of the verdicts being read, the polling of the jury, and the timing of the jurors' dismissal relative to the scuffle. The trial court balanced the probative value against potential prejudice and admitted the audio recording. The court also issued a limiting instruction that Chacano's unidentified convictions, for which the prior jury had found him guilty, were on appeal and not final. Further, the fact that the jurors acquitted Chacano on twelve counts of attempted murder demonstrates admission of the audio recording did not unfairly prejudice him.

[¶ 13] We conclude it was not obvious error to admit the audio recording on relevancy grounds, and the district court did not abuse its discretion in admitting the audio recording because any potential prejudice did not substantially outweigh the recording's probativeness.

### III

[¶ 14] Chacano argues the trial evidence was insufficient to sustain his attempted murder convictions. The issue in a sufficiency of the evidence appeal is whether evidence exists allowing the jury to draw an inference reasonably tending to prove guilt.

To successfully challenge the sufficiency of the evidence on appeal, a defendant must show there is no reasonable inference of guilt when viewing the evidence in the light most favorable to the verdict.... In deciding whether there is sufficient evidence, we do not resolve conflicts in the evidence nor do we weigh the credibility of the witnesses. We determine only whether there is competent

evidence which could have allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

*State v. Kirkpatrick,* 2012 ND 229, ¶ 15, 822 N.W.2d 851 (quoting *State v. Delaney,* 1999 ND 189, ¶ 4, 601 N.W.2d 573).

[¶ 15] Here, Chacano was charged with attempted murder of Byers and Molbert. Chacano argues the State failed to prove that he acted with the culpability required for murder and that he intentionally engaged in conduct which constituted a substantial step toward the crime of murder.

[¶ 16] Section 12.1–16–01(1)(a), N.D.C.C., defines murder as, "[i]ntentionally or knowingly caus[ing] the death of another human being. . . ." A person engages in conduct " '[i]ntentionally' if, when he engages in the conduct, it is his purpose to do so." N.D.C.C. § 12.1–02–02(1)(a). Alternatively, "knowingly" engaging in conduct is if, "when he engages in the conduct, he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1–02–02(1)(b). A person is guilty of criminal attempt under N.D.C.C. § 12.1–06–01(1) if:

> [A]cting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.

Thus, to convict Chacano of attempted murder of Byers and Molbert, the State had to prove Chacano intentionally or knowingly tried to kill Byers and Molbert by intentionally taking a substantial step toward the commission of the crimes.

[¶ 17] Chacano testified he did not intend to kill anyone; rather, he accidentally brought the gun into the courtroom and just "wanted to get rid of the weapon." He asserts his testimony shows "after the verdict was read, he was looking for a place to get rid of the weapon and that he panicked and was attempting to leave the courtroom." Byers testified as the jury was leaving he "heard a clicking noise" and turned and saw "Mr. Chacano . . . standing in front of my counsel table with a handgun." Byers testified Chacano was three or four steps away "pointing [the gun] at me pulling the trigger. It was going click, click, click." Byers testified Chacano was in a shooter's stance with both hands on the gun, and the gun was pointed "[r]ight in the middle of my chest." Byers then lunged at Chacano to disarm him. During this time, Molbert ran at Chacano as well. Byers testified he saw Chacano point the gun at Molbert and pull the trigger, making more clicking sounds. The gun still did not go off, prompting Chacano to continue to play with the slide and the clip. Molbert's testimony was similar to Byers as he noted Chacano had "a gun in his hand trying to work the action." He testified the gun was "pointed directly at me." Molbert testified he could hear the gun clicking as well.

[¶ 18] Sufficient evidence exists to sustain the convictions. The jury heard evidence Chacano brought a loaded gun and three clips with thirty-eight rounds of ammunition into the courtroom, stood in a "shooter's stance" with two hands holding the gun pointed at Byer's chest, pulled the trigger multiple times, and tried to manipulate the clip and action when it did not fire. The jury also heard evidence that as Molbert reacted to the situation, Chacano

pointed the gun at Molbert and pulled the trigger, showing an intent to kill Molbert. These substantial steps strongly corroborate Chacano's intent to kill Byers, and later Molbert when he reacted to the situation.

[¶ 19] Thus, the jury heard testimony describing one event in drastically different ways. Competent evidence existed for the jury to weigh to determine whether Chacano acted with the culpability required for murder and with the intentionality required for an attempt, and the jury found Chacano tried to kill Byers and Molbert. As this Court has noted, "we do not resolve conflicts in the evidence nor do we weigh the credibility of the witnesses." *Kirkpatrick,* 2012 ND 229, ¶ 20, 822 N.W.2d 851 (quoting *Delaney,* 1999 ND 189, ¶ 4, 601 N.W.2d 573). We conclude sufficient evidence exists to allow the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

IV

[¶ 20] Chacano argues he was denied a fair trial because the prosecutor concluded his closing argument with: "[t]he Defendant's testimony is a lie. I ask you to find the Defendant guilty of all 14 counts. Thank you . . . ." Chacano concedes because he did not object to the prosecutor's closing argument, review of this issue is for obvious error.

[¶ 21] "This Court exercises its authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice." *Clark,* 2004 ND 85, ¶ 6, 678 N.W.2d 765 (citation omitted). When analyzing claims of obvious error, this Court may "notice a claimed error that was not brought to the attention of a trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights."

*Id.* If the defendant "establishes a forfeited plain error affects substantial rights, we have discretion to correct the error and should correct it if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citations and quotation omitted). "If the trial error is one of constitutional magnitude, we must determine whether the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence." *State v. Bethke,* 2009 ND 47, ¶ 25, 763 N.W.2d 492 (citation omitted). However, "not every assertion of prosecutorial misconduct, followed by an argument the conduct denied the defendant his constitutional right to a fair trial, automatically rises to an error of constitutional dimension." *State v. Kruckenberg,* 2008 ND 212, ¶ 20, 758 N.W.2d 427.

[¶ 22] "[A]bsent a clear showing of an abuse of discretion, we will not reverse on grounds the prosecutor exceeded the scope of permissible closing argument." *State v. Schmidkunz,* 2006 ND 192, ¶ 7, 721 N.W.2d 387. "Unless the error is fundamental, a defendant must demonstrate a prosecutor's comments during closing argument were improper and prejudicial." *Id.* "[T]o be prejudicial, the improper closing argument must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Id.* (citation and quotation omitted).

[¶ 23] Here, Chacano's story was a candidate for fair and reasonable criticism, but prosecutors should not "inject their personal beliefs into closing argument." *Clark,* 2004 ND 85, ¶ 11, 678 N.W.2d 765. Though "[a] prosecutor's closing argument may properly draw reasonable conclusions . . . from the evi-

dence," the danger is the prosecutor's improper argument "may induce the jury to trust the government's view rather than its own judgment ... when deliberating." *State v. Rivet,* 2008 ND 145, ¶¶ 4–5, 752 N.W.2d 611 (citation omitted). In *Schmidkunz,* we noted our concern for inappropriate prosecutorial comments on evidence by noting, "when a prosecutor comments personally on evidence ... he or she is acting as an unsworn witness for the prosecution who is not subject to cross-examination and who may be perceived as an expert witness." 2006 ND 192, ¶ 10, 721 N.W.2d 387. Prosecutors can argue inferences and what the evidence shows, but opining "[t]he Defendant's testimony is a lie," is improper because it goes beyond an inference. As we have said before, we do not "countenance an attorney calling a witness a liar." *State v. Flohr,* 310 N.W.2d 735, 737 (N.D.1981); *see also Fox v. Bellon,* 136 N.W.2d 134, 139–40 (N.D.1965) (holding it was improper and misconduct for a plaintiff's attorney in a civil trial to call the defendant a "liar," "pathological liar," and a "crook" in rebuttal argument to jury).

■■ [¶ 24] Even though the prosecutor's comment was improper, Chacano must still show it affected his substantial rights. On this record, he cannot make that showing. This was a single, isolated statement in the context of a jury trial. In *Schmidkunz,* the defendant argued the prosecutor's comment in closing argument about facts not in evidence constituted obvious error and required reversal of his conviction. 2006 ND 192, ¶ 5, 721 N.W.2d 387. This Court rejected his argument, stating: "The evidence against Schmidkunz was overwhelming ... we cannot say that the prosecutor's single comment, which did not state any specific evidentiary facts, carried with it enough weight to impact the jury's verdict and Schmidkunz's ability to receive a fair trial." *Id.* at ¶ 11. The same is true here. Multiple State witnesses testified that after the jurors were dismissed, Chacano pointed the gun at Byers and Molbert, pulled the trigger numerous times, and tried to work the action when it did not fire. The prosecutor's statement that "[t]he Defendant's testimony is a lie" was a single, isolated comment that concluded his closing argument. While the prosecutor repeatedly pointed out the implausibility of Chacano's testimony, he did not repeatedly call Chacano a liar. Chacano's assertion this isolated comment impacted his ability to receive a fair trial is belied by the fact the jury found him not guilty of attempted murder of the twelve jurors.

[¶ 25] Additionally, this Court has repeatedly held that even if prejudice results from a prosecutor's argument, it can be minimized by jury instructions telling the jury the attorneys' closing arguments are not evidence. *See, e.g., Clark,* 2004 ND 85, ¶ 11, 678 N.W.2d 765 (concluding any possible prejudice was minimized by the court's cautionary instruction and any isolated improper statement was not obvious error). Here, as in *Clark,* the trial court's jury instructions explicitly stated the "opening statement and closing arguments of counsel are ... not evidence" and "must not be considered by you as evidence." As we held in *State v. Pena Garcia,* "we presume the jury follow[s] the court's instructions." 2012 ND 11, ¶ 10, 812 N.W.2d 328 (citation omitted).

[¶ 26] Thus, because Chacano was not denied a fair trial by the prosecutor's isolated comment, his claimed error does not rise to the level of obvious error requiring reversal.

V

[¶ 27] Because the trial court did not err in admitting the audio recording of the courtroom scuffle, sufficient evidence exists to sustain the convictions, and the prosecutor's improper statement in closing argument does not reach the level of obvi-

ous error, we affirm the criminal judgment.

[¶ 28] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 29] Even though a shortened version of the term "unfair prejudice" is sometimes used in this and other opinions of this Court, prejudice that must be balanced under N.D.R.Ev. 403 is limited to unfair prejudice:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(Emphasis added.)

[¶ 30] The word "prejudice" as used in Rule 403 is used in the sense of "detrimental" or "harmful" to a party's case or position. *See* Advisory Committee Notes to Federal Rule of Evidence 403; *Black's Law Dictionary* 1299 (9th ed. 2009). As a former colleague of ours used to say, "All the good stuff's prejudicial." For example, testimony that "I saw [the defendant] put the gun to [the victim's] head and pull the trigger" would be prejudicial (harmful or detrimental) to the defendant's case, but that does not mean there is anything that would need to be balanced.

[¶ 31] The prejudice of otherwise admissible evidence must be potentially unfair before it needs to be balanced.

[¶ 32] DALE V. SANDSTROM