2014 ND 42

**Ernest COPPAGE, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20130180.**

Supreme Court of North Dakota.

March 11, 2014.

Monty G. Mertz, Fargo, N.D., for petitioner and appellant.

Pamela A. Nesvig, Assistant State's Attorney, Bismarck, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Ernest Coppage appeals from a district court order, denying him post-conviction relief from a criminal judgment entered after a jury convicted him of attempted murder. We recently held in *Dominguez v. State*, 2013 ND 249, ¶¶ 1, 22, 840 N.W.2d 596, that attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b) is not a cognizable offense. In this appeal from a post-conviction proceeding, we conclude Coppage failed to establish he was prejudiced by claimed ineffective assistance of counsel and prosecutorial misconduct. But following a majority of this Court's holding in *State v. Borner*, 2013 ND 141, 836 N.W.2d 383, and *State v. Whitman*, 2013 ND 183, 838 N.W.2d 401, as to the parameters of obvious error, we exercise our inherent authority to notice obvious error because Coppage's conviction for attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b) is not a cognizable offense. We reverse Coppage's conviction for attempted murder and reinstate the jury's verdict of aggravated assault and remand for resentencing.

## I

[¶ 2] To understand the issues in Coppage's present appeal, we describe the procedural history of his conviction and prior post-conviction proceedings.

[¶ 3] In 2006, the State charged Coppage with attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01. Before trial, Coppage moved the court to prevent the State from introducing evidence of his prior alleged domestic violence. The State did not object, and the court granted Coppage's pretrial motion. In *State v. Coppage*, 2008 ND 134, 751 N.W.2d 254 (*"Coppage I"*), we summarized the evidence adduced at a jury trial:

At trial, the victim testified that Coppage used a plunger and his hands to hit her. She said Coppage choked her with his hands and the plunger handle while she was on her stomach. She also testified that she pled with him not to kill her during the incident, to which he responded he did not care if he killed her. The victim testified that she managed to get to a couch, but Coppage followed her and hovered over her with a serrated steak knife. She testified she was able to grab the knife and throw it before running to a chair. Coppage followed her with a pair of scissors and stabbed her leg before she was able to grab the scissors from Coppage and flee the home. The victim testified she left the residence. Coppage caught up to her, hit her in the head, told her to be quiet, and dragged her back into the residence.

Coppage testified he told the victim during the altercation that he was not going to kill her. He claimed he only used his fists during the incident. He said the victim struck him three times, and that he was attempting to defend himself.

The victim's treating physician testified that the victim suffered soft tissue injuries and a right orbital fracture. He testified that a CAT scan showed the victim suffered from brain hemorrhaging. The victim was hospitalized for

three days. The physician indicated the victim's wounds were consistent with stabbing with a scissors and forceful application of a wooden rod against her throat area. He identified possible defensive wounds on the victim's right thumb and left forearm. The physician also identified hemorrhaging in the victim's eyes consistent with the infliction of force or trauma.

*Coppage I*, at ¶¶ 3–5.

[¶ 4] During trial, Coppage testified he had hit the victim multiple times but claimed he was defending himself. The State cross-examined Coppage about whether he had previously been "physical with a woman" or had "hit a woman," which he denied. The State then requested the trial court, outside the jury's presence, to allow the introduction of evidence of a prior misdemeanor assault conviction to impeach Coppage's testimony.

[¶ 5] Coppage's attorney objected, contending the State was trying to circumvent the court's order granting the pretrial motion, the State had not disclosed evidence of the prior conviction before trial, the conviction did not satisfy the requirements for impeachment under N.D.R.Ev. 609, and the State had not shown the evidence's probative value outweighed its prejudicial effect. The trial court overruled Coppage's objection, and the State thereafter cross-examined Coppage regarding a 2004 conviction, entered after he had pled guilty to domestic assault. During cross-examination Coppage conceded that he had assaulted another woman and his earlier trial testimony "was not truthful." The jury found Coppage guilty of attempted murder and aggravated assault, which under the law of the case had been designated as a lesser-included offense of attempted murder. *See Coppage I*, 2008 ND 134, ¶¶ 1–2, 22–23, 28, 751 N.W.2d 254. Coppage appealed from the criminal judgment and an order denying his new trial motion, arguing the verdict form was logically and legally inconsistent and there was insufficient evidence to support the attempted murder conviction. The same attorney represented Coppage both at trial and in his direct appeal. This Court affirmed both the judgment and order in that appeal. *Id.* at ¶ 28.

[¶ 6] In 2009, Coppage applied for post-conviction relief, alleging his trial attorney was ineffective, the jury selection was biased, and the crime scene was tainted. Coppage was represented by counsel during these proceedings. The district court denied his application after a hearing, and Coppage did not appeal that decision.

[¶ 7] In 2010, Coppage again applied for post-conviction relief, claiming that he was subjected to double jeopardy when convicted of both attempted murder and aggravated assault, that he was denied due process when the State improperly introduced evidence of prior crimes as impeachment evidence, that the State had engaged in prosecutorial misconduct, and that the trial court erred in failing to require the jury to deliberate further after returning a verdict finding him guilty of both attempted murder and aggravated assault. The State moved to dismiss his application, claiming it was barred by res judicata (the matter had been previously decided) and misuse of process. Coppage responded that his claims were not barred because he had relied on his appointed counsel, whose assistance he alleged was ineffective. He also filed an affidavit claiming he received ineffective assistance of trial, appellate, and post-conviction counsel.

[¶ 8] The district court summarily dismissed Coppage's application on the basis of res judicata and misuse of process, and he appealed. We reversed and remanded, concluding the court erred in summarily

dismissing Coppage's claims about the admission of evidence, prosecutorial misconduct, and ineffective assistance of post-conviction counsel without holding an evidentiary hearing. *Coppage v. State,* 2011 ND 227, ¶¶ 19–20, 807 N.W.2d 585 (*"Coppage II "*). We held Coppage had raised a genuine issue of material fact regarding his ineffective assistance of post-conviction counsel claim by presenting evidence about why his failure to raise the evidentiary and prosecutorial misconduct issues in prior proceedings was excusable. *Id.*

[¶ 9] After an evidentiary hearing on remand, the district court granted Coppage's application for post-conviction relief. The court held, in part, the evidence of Coppage's prior conviction was not admissible under N.D.R.Ev. 609 because the conviction was for a misdemeanor offense and was not for a crime of dishonesty. The court found Coppage had received ineffective assistance of trial counsel because his counsel had failed to request an instruction limiting the jury's use of the evidence of his prior conviction and he was prejudiced by the admission of that evidence. The court granted Coppage post-conviction relief to the extent he was entitled to a new trial on the attempted murder charge and vacated his attempted murder conviction. The court also stated that "[b]ased on Coppage's admission to the crime of aggravated assault, ... the sentence for the same is deemed satisfied[,]" and "Coppage is to be returned to [the district court] for the setting of bond.".

[¶ 10] The State appealed, and Coppage cross-appealed. We again reversed and remanded. *Coppage v. State,* 2013 ND 10, ¶¶ 1, 27, 826 N.W.2d 320 (*"Coppage III "*). We explained our rationale for reversing the district court's decision, stating:

Although the evidence of Coppage's prior conviction does not meet the requirements for admission under N.D.R.Ev. 609 because the conviction was for a misdemeanor, the rule does not apply because the evidence was not offered to impeach Coppage's general character for truthfulness. The court did not consider whether the evidence was properly admitted for other reasons, including whether Coppage "opened the door" and the evidence was admissible to contradict his testimony and whether the probative value of the evidence substantially outweighed the danger of unfair prejudice under N.D.R.Ev. 403.

Furthermore, the court also did not correctly apply the law in determining whether Coppage was prejudiced by his counsel's conduct. The court found Coppage's trial counsel's conduct fell below an objective standard of reasonableness because he failed to request an instruction limiting the jury's use of the evidence of Coppage's prior conviction. The court further found Coppage was prejudiced by his counsel's conduct because the evidence was improperly admitted and the admission prejudiced Coppage. However, that is not the correct standard for ineffective assistance of counsel.... The court did not assess the prejudicial effect of counsel's error within the context of the remaining evidence and the overall conduct of the trial. *On remand, the court must consider the error in the context of the properly presented evidence and overall conduct of the trial and determine whether Coppage established a reasonable probability that the result of the trial would have been different if his counsel had requested a limiting instruction.*

*Coppage III,* at ¶¶ 20–21 (emphasis added).

[¶ 11] We held the district court had failed to carry out the terms of our mandate on remand in *Coppage II.* Although

the court had correctly begun its analysis by deciding whether Coppage's trial counsel was ineffective for failing to request a limiting instruction, we held the district court had not properly applied the law to decide whether Coppage had been prejudiced and had failed to decide whether Coppage's first post-conviction counsel was also ineffective for not arguing his trial counsel was ineffective and for not raising the prosecutorial misconduct issues. *Coppage III*, 2013 ND 10, ¶¶ 24–26, 826 N.W.2d 320. We said for Coppage to succeed on his claim, he must prove:

(1) his trial and appellate counsel's representation fell below an objective standard of reasonableness, (2) there is a reasonable probability that the result of the trial or appeal would have been different absent his counsel's alleged errors, (3) his prior post-conviction counsel's performance fell below an objective standard of reasonableness by not arguing his trial and appellate counsel was ineffective, and (4) there is a reasonable probability the result of his prior post-conviction proceeding would have been different absent his counsel's alleged errors.

*Coppage III*, at ¶ 25.

[¶ 12] In May 2013, the district court denied Coppage's post-conviction relief application in its entirety and affirmed his conviction for attempted murder, with the previously imposed sentence. Coppage appealed from that order.

[¶ 13] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 29–32.1–03. Coppage's appeal is timely under N.D.R.App.P. 4(d). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–32.1–14.

## II

[¶ 14] Generally, a post-conviction relief applicant has the burden to establish a basis for relief. *Ellis v. State*, 2003 ND 72, ¶ 5, 660 N.W.2d 603. Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure. *Wilson v. State*, 2013 ND 124, ¶ 9, 833 N.W.2d 492. Under N.D.R.Civ.P. 52(a), the district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless they are clearly erroneous. *Wilson*, at ¶ 9. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, we are left with a definite and firm conviction a mistake has been made. *Id.* Questions of law are fully reviewable on appeal of a post-conviction proceeding. *Ellis*, at ¶ 6.

## III

[¶ 15] Coppage argues the district court's order denying his post-conviction relief application should be reversed on the basis of ineffective assistance of counsel, prosecutorial misconduct entitles him to a new trial, and his right to a fair trial was violated through obvious error.

### A

[¶ 16] Coppage contends that although the district court concluded he received ineffective assistance from his trial counsel, his appellate counsel, and his first post-conviction counsel, the district court's conclusion that there was not a reasonable probability the outcome would have been different is "inexplicable and erroneous."

[¶ 17] "Ineffective assistance of counsel is a mixed question of fact and law, which is fully reviewable on appeal." *Coppage III*, 2013 ND 10, ¶ 12, 826 N.W.2d

320; *see also Wright v. State,* 2005 ND 217, ¶ 9, 707 N.W.2d 242.

In accord with the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), a defendant claiming ineffective assistance of counsel bears the heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance. The defendant must first overcome the "strong presumption" that trial counsel's representation fell within the wide range of reasonable professional assistance, and courts must consciously attempt to limit the distorting effect of hindsight. *Heckelsmiller [v. State,* 2004 ND 191, ¶ 3, 687 N.W.2d 454]; *Ernst v. State,* 2004 ND 152, ¶ 9, 683 N.W.2d 891.

To meet the "prejudice" prong of the *Strickland* test the defendant carries the heavy burden of establishing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. The defendant must prove not only that counsel's assistance was ineffective, but must specify how and where trial counsel was incompetent and the probable different result. Unless counsel's errors are so blatantly and obviously prejudicial that they would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, the prejudicial effect of counsel's errors must be assessed within the context of the remaining evidence properly presented and the overall conduct of the trial.

*Coppage III,* at ¶ 12 (quoting *Wright,* at ¶ 10). A "reasonable probability" means a probability sufficient to undermine confidence in the outcome of the proceedings.

*Tweed v. State,* 2010 ND 38, ¶ 26, 779 N.W.2d 667.

To prevail on an ineffective assistance of counsel claim, the defendant must first overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Kruckenberg [v. State],* 2012 ND 162, ¶ 10, 820 N.W.2d 314. Evidence of a criminal defendant's prior convictions generally is not admissible and we have " 'warned of the dangers inherent in allowing evidence of other acts to show propensity and of tempting a jury to convict a defendant for actions other than the charged misconduct.' " *State v. Schmeets,* 2009 ND 163, ¶ 15, 772 N.W.2d 623 (quoting *State v. Ramsey,* 2005 ND 42, ¶ 19, 692 N.W.2d 498). " '[A] criminal defendant faces the unique risk that juries will use prior convictions as evidence of the defendant's propensity to commit crime, rather than considering the convictions for impeachment purposes.' " *State v. Stewart,* 2002 ND 102, ¶ 7, 646 N.W.2d 712 (quoting *State v. Randall,* 2002 ND 16, ¶ 13, 639 N.W.2d 439). When the prior conviction is similar to the crime charged the danger is heightened. *Stewart,* at ¶ 8. An instruction limiting the jury's use of the evidence is generally sufficient to remove the prejudice and limit the danger to the defendant. *Laib [v. State],* 2005 ND 187, ¶ 13, 705 N.W.2d 845; *State v. Hernandez,* 2005 ND 214, ¶ 24, 707 N.W.2d 449; *see also State v. Aabrekke,* 2011 ND 131, ¶ 15, 800 N.W.2d 284 (because of the inherent dangers in admitting evidence of prior bad acts and the court's obligation to ensure a defendant receives a fair trial, the court should give a cautionary or limiting instruction).

*Coppage III,* 2013 ND 10, ¶ 14, 826 N.W.2d 320.

[¶ 18] Coppage argues the district court did not engage in an analysis of the evidence at trial to support its "conclusory statements" that there was no reasonable likelihood that the outcome of the trial, direct appeal, or initial post-conviction proceeding would have been different but for counsel's deficient performance. He contends that admitting his prior conviction and the prosecution's improper painting of him as a liar was highly prejudicial in the context of the totality of the case.

[¶ 19] Coppage contends that the jury should have been instructed to limit its consideration of the evidence of his prior conviction to impeachment, that his trial counsel never asked for such an instruction, and that no instruction was given. Coppage contends the jury was left to believe it could use the evidence for whatever purpose it wished, including to determine that because of his prior assault conviction, he was more likely to be a violent person. Coppage argues that, while the district court had previously found prejudice, its present "order upon remand" has reversed itself without any analysis. Coppage also argues that he had not "opened the door" to the admission of the misdemeanor assault conviction. He contends that the prosecutor engaged in a "subterfuge" to gain admission of the prior conviction by misstating both the testimony and the law to the trial court. Coppage contends that opening the door does not apply here, and his testimony was literally true, rendering the prosecutor's entire line of questioning improper. He claims that because the conviction should never have been admitted under any theory on this record, the error was compounded when the court did not issue a limiting instruction.

[¶ 20] Here, in the order on appeal, the district court found that Coppage's trial counsel, appellate counsel, and first post-conviction relief counsel were ineffective, because they failed to request or raise an issue about the necessity of a limiting instruction. However, the court concluded that Coppage had failed to establish there was a reasonable probability the result of the trial or appeal would have been different absent his counsel's alleged errors, and failed to establish there was a reasonable probability the result of his prior post-conviction proceeding would have been different absent his counsel's alleged errors.

[¶ 21] Assuming without deciding that his counsels' representation fell below an objective standard of reasonableness and was ineffective, we conclude Coppage failed to establish a reasonable probability the result of his prior trial, appeal, and post-conviction proceeding would have been different absent his counsels' alleged errors. This is particularly true under our disposition of this case. Here, all that remains is Coppage's conviction for aggravated assault. Coppage requested the jury instruction for aggravated assault as a lesser included offense at trial, and he has conceded that he had committed an aggravated assault and that the evidence in the record supports that charge.

[¶ 22] We conclude that Coppage failed to carry his "heavy burden" of proving he was prejudiced by counsels' alleged deficient performance. We, therefore, affirm that part of the district court's order denying Coppage post-conviction relief based on ineffective assistance of counsel.

B

[¶ 23] Coppage also argues that he is entitled to post-conviction relief because of prosecutorial misconduct. We have described our standard for reviewing allegations of prosecutorial misconduct:

We first determine whether the prosecutor's actions were misconduct and, if they were, then we examine whether the

misconduct had prejudicial effect. To determine whether a prosecutor's misconduct rises to a level of a due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights.... Our review is limited to determining if the prosecutor's conduct prejudicially affected the defendant's substantial rights, so as to deprive the defendant of a fair trial. *State v. Estrada*, 2013 ND 79, ¶ 28, 830 N.W.2d 617 (quoting *State v. Vondal*, 2011 ND 186, ¶ 12, 803 N.W.2d 578).

[¶ 24] Coppage argues that since there was no legitimate use of his prior misdemeanor assault conviction, the prosecutorial misconduct is egregious because the prosecutor engaged in "obvious planning and preparation to illegally and unfairly use the misdemeanor assault conviction." He also contends prosecutorial misconduct occurred because the prosecutor's improper statements encouraged the jury to consider Coppage's prior conviction when discussing culpability. Coppage contends the prosecutor used his prior assault conviction not to show that he was untruthful but to show Coppage's expert witness did not have the proper information to testify on Coppage's intent. The State responds, however, that it did not misrepresent the facts or the law to the court during trial, and asserts that it did not fail to disclose Coppage's prior conviction. The State also contends that its alleged improper statements during closing arguments were not objected to and must be reviewed for plain error; that the State's statements regarding Coppage's truthfulness were not so influential as to alter the outcome of the trial; and that the absence of a limiting instruction does not amount to obvious error.

[¶ 25] Here the district court concluded that prosecutorial misconduct had not prejudicially affected Coppage's substantial rights to deprive him of a fair trial. The court concluded the jury had been instructed that the attorneys' closing arguments were not evidence, and there was no evidence the jury did not follow the court's instructions. The court also found that while the prosecutor did "repetitively refer to the defendant in his final argument as a liar," those comments did not "constitute prosecutorial misconduct rising to an error of constitutional dimension," considering the court's instructions to the jury regarding closing arguments. *See Chacano*, 2013 ND 8, ¶¶ 23–24, 826 N.W.2d 294 (despite prosecutor's improper comment that defendant lied, defendant failed to make a showing it affected his substantial rights).

[¶ 26] We conclude the prosecutor's conduct here did not prejudicially affect Coppage's substantial rights so as to deprive him of a fair trial.

## IV

### A

[¶ 27] While Coppage's present appeal was pending, we held in *Dominguez v. State*, 2013 ND 249, ¶¶ 1, 22, 840 N.W.2d 596, that attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b) is not a cognizable offense. In reaching that conclusion, we explained:

A majority of this Court has held murder committed under circumstances manifesting an extreme indifference to the value of human life is a general intent crime and does not require a person act with specific intent to kill; rather, death and the commission of the offense is a consequence of the person's willful conduct. *State v. Borner*, 2013 ND 141, ¶ 18, 836 N.W.2d 383. A person engages in conduct "willfully" if he "engages in the conduct intentionally, knowingly, or recklessly." N.D.C.C.

§ 12.1–02–02(1)(e). A majority of this Court held:

> Under N.D.C.C. § 12.1–16–01(1)(b), a person does not intend to cause the death of another human-being, but rather death is a consequence of the defendant's willful conduct. In other words, extreme indifference murder results in an unintentional death from behavior manifesting an extreme indifference to the value of human life.... An individual cannot intend to achieve a particular offense that by its definition is unintended.

*Borner*, at ¶ 18 (citations omitted). Because criminal attempt requires an intent to complete the commission of the underlying crime but murder committed under circumstances manifesting an extreme indifference to the value of human life results in an unintentional death and does not require an intent to commit that particular offense, there is an inconsistency in the elements of attempt and murder under N.D.C.C. § 12.1–16–01(1)(b) that is logically and legally impossible to rectify consistent with the holding in *Borner*.

*Dominguez*, at ¶ 13.

[¶ 28] Under the factual circumstances in *Dominguez* we said that "[u]nder our statutory scheme, reckless endangerment [N.D.C.C. § 12.1–17–03] is the appropriate offense when a person's conduct manifests an extreme indifference to human life and there is no evidence of an intent to kill." *Dominguez*, 2013 ND 249, ¶ 19, 840 N.W.2d 596. But, "[w]hen there is evidence of an intent to kill, a person can be convicted of attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(a) for attempting to knowingly or intentionally cause the death of another human being." *Dominguez*, at ¶ 19. However, because Dominguez had been charged with and the jury was instructed

on attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(a) and (b), it was unclear whether the jury had found Dominguez guilty of attempted intentional murder or attempted murder under circumstances manifesting an extreme indifference to the value of human life. *Dominguez*, at ¶¶ 24–25. We therefore remanded for the district court to decide whether the error was harmless or whether Dominguez was entitled to relief. *Id.* at ¶ 27.

[¶ 29] Unlike in *Dominguez*, in this appeal Coppage has not claimed attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b) is not a cognizable offense. In *Borner*, 2013 ND 141, ¶ 22–25, 836 N.W.2d 383, and *Whitman*, 2013 ND 183, ¶¶ 7–17, 838 N.W.2d 401, however, a majority of this Court further defined the parameters of obvious error when deciding an offense is not cognizable. In a criminal case, under N.D.R.Crim.P. 52(b), "[a]n obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention," and this rule "applies to both the trial courts and the appellate courts." N.D.R.Crim.P. 52(b), Explanatory Note. *See State v. Whitman*, 2013 ND 183, ¶ 7, 838 N.W.2d 401 (this Court has authority under N.D.R.App.P. 2 to suspend procedural rules to expedite our decision or for other good cause); *see also Bell v. State*, 1998 ND 35, ¶ 34, 575 N.W.2d 211 (despite waiver of a claimed irregularity, error may provide basis for reversal when constituting obvious error affecting a substantial right). We exercise our authority to notice obvious error cautiously and only in "exceptional circumstances in which the defendant has suffered a serious injustice." *State v. Chacano*, 2013 ND 8, ¶ 9, 826 N.W.2d 294.

[¶ 30] When analyzing claims of obvious error, we may "notice a claimed

error that was not brought to the attention of a trial court if there was (1) error, (2) that is plain, and (3) affects substantial rights." *Chacano*, 2013 ND 8, ¶ 9, 826 N.W.2d 294. When a forfeited plain error affects substantial rights, "we have discretion to correct the error and should correct it if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* "To constitute obvious error, [t]he error must be a clear deviation from an applicable legal rule under current law." *Id.* at ¶ 10 (quotations omitted). We invoke our discretion here to notice obvious error on our own motion to address the impact of *Dominguez*, 2013 ND 249, 840 N.W.2d 596, in this case.

### B

[¶ 31] Here, unlike in *Dominguez*, there is clear indication the jury found Coppage guilty of attempted murder under circumstances manifesting an extreme indifference to the value of human life under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b). Coppage was charged in an amended information with violating N.D.C.C. §§ 12.1–06–01 and 12.1–16–01, without reference to subsection (1)(a) or (b). The amended information stated in part:

> The defendant, acting with the culpability required to commit the crime of murder intentionally engaged in conduct which, in fact, constitutes a substantial step toward the commission of the crime of murder; specifically, the defendant attempted to kill [the victim] by intentionally choking her to the point of unconsciousness or repeatedly striking her with a wooden rod about the head or stabbing her a with scissors, <u>and did so</u> *under circumstances manifesting an extreme indifference to the value of human life.*

(Emphasis added.) Although the verdict form, on which the jury found Coppage guilty of both attempted murder and aggravated assault, did not cite either N.D.C.C. § 12.1–16–01 or any specific subsection, the verdict generally refers to the information charging Coppage "with the Crime of Attempted Murder." The jury instructions stated, "A person is guilty of Attempted Murder if the person acted with the kind of culpability otherwise required for the commission of the crime, intentionally engaged in conduct which, in fact, constitutes a substantial step toward the commission of the crime of murder." The instructions also stated that the State was required to prove the following "essential elements" beyond a reasonable doubt for attempted murder:

> (1) On or about the 24th day of October, 2006, in Burleigh County, North Dakota;
>
> (2) The Defendant, Ernest Coppage,
>
> (3) Intentionally,
>
> (4) *Engaged in conduct which constitutes a substantial step toward the commission of the crime of murder,*
>
> (5) *Did so under circumstances manifesting an extreme indifference to the value of human life,*
>
> (6) Specifically, the defendant attempted to kill [the victim], and
>
> (7) The Defendant was not acting in self defense.

(Emphasis added.)

[¶ 32] During the State's closing argument, the prosecutor argued to the jury the State did not have to show that Coppage intended the victim's death, but rather, "[t]he State has to show that he intended certain conduct and in intentionally conducting that conduct he manifested an extreme indifference to the value of her human life." In arguing Coppage's actions manifested "an extreme indifference to the value of human life," the prosecutor

also stated, "Here is the key. You don't have to believe he intended for her to be dead. You have to believe he intended to engage in certain conduct—the beating, choking, the stabbing, whatever happened in that attack—and in so doing he manifested an extreme indifference to whether she died. He beat her without care. And he told her as much. I don't care. I'll go to jail." In Coppage's direct appeal from his conviction, the State also asserted:

Here, Coppage was charged with Attempted Murder under N.D.C.C. § 12.1–16–01(1)(b), which required that he intentionally engage in certain conduct which manifested an extreme indifference to the value of human life.... Thus, contrary to the position Coppage takes on appeal, the State did not have to prove that he actually intended to kill the victim—only that he intentionally engaged in the identified conduct and he did so with an extreme indifference to her life. *Compare* to N.D.C.C. § 12.1–16–01(1)(a), which requires proof of actual intent to cause death.

[¶ 33] In *Coppage I*, 2008 ND 134, ¶ 22, 751 N.W.2d 254, this Court concluded the jury's verdict finding Coppage guilty of both attempted murder and aggravated assault was not legally inconsistent, stating:

The culpability required for both murder under N.D.C.C. § 12.1–16–01(1)(b) and aggravated assault under N.D.C.C. § 12.1–17–02(1) is willfully. For attempt under N.D.C.C. § 12.1–06–01(1), the culpability level of the substantial step conduct is intentionally. *See [State v.] Frohlich*, 2007 ND 45, ¶ 24, 729 N.W.2d 148. The culpability requirements for the two crimes are not identical because conviction of attempted murder in this case also required proof of "circumstances manifesting extreme indifference to the value of human life"

and intentionality of the substantial step conduct. However, in order to convict an individual of aggravated assault, there is no need to prove an absence of circumstances manifesting an extreme indifference to the value of human life, nor is there a need to prove an absence of intentionality.

*Coppage I*, at ¶ 22. Additionally, in concluding sufficient evidence supported Coppage's conviction for attempted murder, we said that "[s]ection 12.1–16–01(1)(b), N.D.C.C., requires only that Coppage's actions manifest an extreme indifference to human life, not that Coppage's actions result in a potentially fatal injury[,]" and that Coppage had not met his burden to show the evidence revealed "no reasonable inference of guilt when viewed in the light most favorable to the verdict." *Coppage I*, at ¶ 27. To the extent *Coppage I* is inconsistent with *Dominguez*, we conclude it is no longer good law.

[¶ 34] Under these circumstances, it is clear the jury found Coppage guilty of attempted murder under N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), and because attempted murder under N.D.C.C. § 12.1–16–01(1)(b) is not a cognizable offense, we exercise our discretion to notice this obvious error and reverse the district court's order to the extent that it denies post-conviction relief.

[¶ 35] We grant Coppage post-conviction relief under N.D.C.C. § 29–32.1–01(a) and (f), and vacate the criminal judgment for attempted murder. Nonetheless, we address his claims as they relate to the jury's verdict finding him guilty of aggravated assault.

C

[¶ 36] When no crime has in fact been charged, a majority of this Court has recently said that the effect was to place the defendant "in the same position as if no

crime had been charged," and the defendant "may be prosecuted under a new charging document as if no prior proceedings existed." *See Whitman,* 2013 ND 183, ¶ 19, 838 N.W.2d 401; *Borner,* 2013 ND 141, ¶ 26, 836 N.W.2d 383; *see also Ball v. United States,* 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) (a defendant who successfully obtains an indictment be set aside on appeal may be tried anew); *Montana v. Hall,* 481 U.S. 400, 404, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) (relying on *Ball* and holding a retrial is permitted after a conviction is reversed as a result of a defective charging document). Unlike *Borner* and *Whitman,* however, Coppage was also convicted at trial of another offense-that is, aggravated assault as a lesser-included offense.

[¶ 37] We have said that "a conviction does not have to be set aside automatically if the jury is instructed on multiple theories of guilt and one of the theories is invalid" and that "not all constitutional errors require automatic reversal; rather, the State must prove the error was harmless beyond a reasonable doubt." *Dominguez,* 2013 ND 249, ¶ 26, 840 N.W.2d 596. "Before a federal constitutional error may be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Clark v. State,* 2001 ND 9, ¶ 15, 621 N.W.2d 576.

[¶ 38] Although Coppage was charged and tried for an offense that was not cognizable, under the circumstances we conclude the error was harmless beyond a reasonable doubt for his conviction for aggravated assault. We said in *Coppage I,* 2008 ND 134, ¶ 23, 751 N.W.2d 254, that under the law of the case the "lesser-included offense of aggravated assault would merge with the greater offense of attempted murder in this particular case." However, because the attempted murder under N.D.C.C. § 12.1–16–01(1)(b) is not a cognizable offense, the aggravated assault offense did not merge into the "greater" offense, and his conviction for aggravated assault is all that remains.

[¶ 39] At trial, Coppage's counsel asked the court to instruct the jury on the elements of aggravated assault as a lesser included offense, the court characterized aggravated assault as a lesser-included offense in the instructions and the verdict form, and neither the State nor Coppage objected to the instruction. *See Coppage I,* at ¶ 23. The instruction on aggravated assault became the law of the case. *Id.* Furthermore, Coppage has conceded in the present appeal from post-conviction proceedings that "he had committed an aggravated assault" and that "evidence of record amply supports that charge." We therefore conclude that the jury's verdict finding him guilty of aggravated assault remains and that criminal judgment should be entered on it.

V

[¶ 40] On the basis of the foregoing, we conclude Coppage failed to establish in this post-conviction relief proceeding that he was prejudiced by the claimed ineffective assistance of counsel and prosecutorial misconduct. We exercise our inherent authority to notice obvious error on our own motion on the basis of our decision in *Dominguez,* because Coppage's conviction for attempted murder was also based on N.D.C.C. §§ 12.1–06–01 and 12.1–16–01(1)(b), which is not a cognizable offense.

[¶ 41] Therefore, while we agree with the district court's order to the extent the court denied Coppage's application for post-conviction relief on the grounds addressed in the prior remand; we reverse the order denying post-conviction relief, however, and remand for the district court: 1) to vacate the criminal judgment based on the attempted murder conviction, and

2) to enter a judgment and impose sentence on Coppage for the aggravated assault conviction.

## VI

[¶ 42] We have considered the remaining issues and arguments raised by Coppage and deem them to be either unnecessary to our decision or without merit. The district court order denying Coppage postconviction relief is reversed, his conviction of aggravated assault is reinstated, and this case is remanded for sentencing consistent with this opinion.

[¶ 43] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, S.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 44] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.